## CONFIDENTIAL RECEIPT, RELEASE AND INDEMNIFICATION AGREEMENT

This Confidential Receipt, Release and Indemnification Agreement is entered into by and between the **Settling Plaintiff** (as defined in Paragraph F below) and the **Released Parties** (as defined in Paragraph G below), on the date(s) set forth herein and in accordance with the following terms and conditions:

**I.**   **Definitions**

Throughout this Agreement and in the following Recitals, the following definitions apply:

A.   The term "Agreement" shall mean this Receipt, Release and Indemnification Agreement.

B.   The term "NORM" (an acronym for "Naturally Occurring Radioactive Material") as used in this Agreement shall mean any nuclide that is radioactive in its natural physical state (*i.e.*, not man-made) and shall include, without limitation, "Technologically Enhanced Naturally Occurring Radioactive Material" (sometimes referred to as "TENORM"), "Technologically Enhanced Radioactive Material" (also known as "TERM") and all similar substances or matter.

C.   The term "the Litigation" as used in this Agreement shall mean the matters styled *James Bailey, et al., v. Exxon Mobil Corporation, et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2003-14235, Division "B-15"; *Malvin D. Benoit, et al. v. Intracoastal Tubular Services, Inc., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2001-21094, Division "B"; *Barbara Castell v. ExxonMobil Corporation, et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2002-12334, Division "A-5"; *Cynthia Waller v. Chevron U.S.A., Inc., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2008-05619, Division "L-6", and *"Levi Coleman v. H. C. Price, Co., et al."* Civil District Court for the Parish of Orleans, State of Louisiana, No. 2006-3097, Division "L-6" (later removed to the United States District Court for the Eastern District of Louisiana, Docket No. 11-2937). "The Litigation" shall also include any other litigation arising out of the facts and circumstances underlying these lawsuits, including without limitation, any substitute or successor lawsuit or any claim to recover workers' compensation benefits and/or medical liens.

D.   The term "Parties" as used in this Agreement shall mean Settling Plaintiffs (as defined in Paragraph F) and Released Parties (as defined in Paragraph G).

E.   The term "Person" as used in this Agreement shall mean any individual, corporation, firm, partnership, limited liability company, unincorporated association, organization, governmental unit, sole providership, trust or any other entity, or state, guardian, or beneficiary thereof, recognized in law or in fact to have rights or obligations.

F.   The term "Settling Plaintiff" as used in this Agreement shall mean: PATRICK LOOKHOFF, (Social Security No. ██████████), (Date of Birth ██████████).

G.   The term "Released Parties" as used in this Agreement shall mean KBR, Inc., in proper name and as variously named as a defendant in the Litigation (including but not limited to, *inter alia*, Kellogg, Brown & Root, Inc., Brown & Root, Inc., Brown & Root USA, Inc., Brown & Root Industrial Services, Inc., KBRITX-1 NewCo. Inc., and KBR1 DL-1, Newco, Inc.); the term "Released Parties" shall also include all of their current or former agents, servants, brokers, contractors, subcontractors, employees, employers, officers, directors, managers, shareholders, administrators, managers, attorneys, representatives, insurers, reinsurers, underwriters, and, to the extent not named in the Petitions for Damages and all supplements and amendments thereto in the Litigation, each and every one of the aforementioned Released Parties' predecessors, successors, parents, affiliates, brother or sister corporations, and/or related subsidiary companies or corporations, unincorporated divisions, assigns, indemnitees, co-owners, partners, general partners, joint venturers and/or limited partners, and any Person for which any of them is or may be liable, whether in contract or tort, and all Persons acting by, through, or under any of them, without limitation (whether specifically named or otherwise included under this paragraph).   It is expressly agreed that the release of contractors, subcontractors, insurers, reinsurers and underwriters herein is solely to the extent that they



provided services or insurance to the "Released Parties", but the term "Released Parties" does not include any non-settling contractor, subcontractor, insurer, reinsurer or underwriter whose liability is not derived from providing services or insurance to the Released Parties.

       H.     The term "Settlement Funds" as used in this Agreement shall mean the amount of consideration stated in Section III of this Agreement.

## II.   RECITALS

      The following recitals are descriptive only and shall not be construed as admissions or as part of the operative terms of this Agreement.  All terms used in the recitals are to be construed in accordance with the Definitions provided in Section I.

      **WHEREAS**, Settling Plaintiff was allegedly exposed to NORM, TERM, TENORM and other hazardous, toxic and carcinogenic materials while working in various jobs, including but not limited to pipe cleaner, inspector, truck driver and supervisor, during the cleaning, handling, storage, and/or transportation of many different pipes, both new and used oil field equipment and tubing at various pipeyards, including but not limited to the Intracoastal Tubular Services, Inc. (ITCO) pipeyards, OFS, Inc. yard(s), Alpha Technical Services, Inc. yard(s), the Halliburton Energy Services, Inc. yard in Harvey, Louisiana, the Bredero Price Company service yard in Harvey, Louisiana, the Brown & Root, Inc. and/or KBR, Inc. service yard in Belle Chasse, Louisiana, and all other possible exposure locations located in Louisiana, Alabama, and Texas, or Settling Plaintiff has brought wrongful death and/or survival claims for someone who was so allegedly exposed;

      **WHEREAS**, such exposures allegedly caused Settling Plaintiff or another to get sick and/or contract certain diseases or illnesses;

      **WHEREAS**, as a result of these alleged exposures, suits were filed against various oil company defendants, various pipeyard defendants and other defendants including Released Parties herein, which actions were styled *James Bailey, et al., v. Exxon Mobil Corporation, et al.*, Docket No. 2003-14235, Civil District Court for the Parish of Orleans, State of Louisiana, Division "B-15"; *Malvin D. Benoit, et al. v. Intracoastal Tubular Services, Inc., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2001-21094, Division "B"; *Barbara Castell v. ExxonMobil Corporation, et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2002-12334, Division "A-5"; *Cynthia Waller v. Chevron U.S.A., Inc., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2008-05619, Division "L-6", and *Levi Coleman v. H. C. Price, Co., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2006-3097, Division "L-6";

      **WHEREAS**, Settling Plaintiff has maintained the Litigation and have therein asserted claims for damages.  The Released Parties have filed responsive pleadings denying liability and denying that Settling Plaintiffs were exposed to any harmful substance, including but not limited to, NORM, TERM and/or TENORM while working at or visiting the ITCO, Brown & Root, Inc., Bredero Price Company, Halliburton Energy Services, Inc., and/or Halliburton Company yards or any other location;

      **WHEREAS**, the Parties now desire and intend to fully and finally settle all disputes, controversies, and claims that presently exist or that ever could be made concerning the subject matter of the Litigation, including without limitation, Settling Plaintiff's exposure to NORM, TENORM, volatile organics, or any allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant, and any existing or potential future cancers, survival actions and/or wrongful death claims arising from such alleged exposures to themselves, and thereby avoid the expense, inconvenience and distraction of further litigation; and

      **WHEREAS**, The Parties agree that nothing contained in this Agreement constitutes an admission or any evidence that the Released Parties breached any obligation, or engaged in any wrongdoing or incurred liability of any kind, and that this confidential settlement shall not be considered an admission of fault, liability or responsibility by the Released Parties, who continue to deny such liability and disclaim such responsibility.

In consideration of and in reliance upon the Definitions, promises, covenants, understandings and obligations set forth in this Agreement, the Parties hereto mutually agree as follows:

## III.  TERMS OF AGREEMENT

1.     **CONSIDERATION TO SETTLING PLAINTIFF.**  The Released Parties agree to pay the following amount to Settling Plaintiff by check made payable to "Smith Stag Trust Account":

████████████████████████████████████████████████████

This total consideration of $█████████████████████████████ is provided in exchange for the following documents and acts: 1) this Receipt, Release and Indemnification Agreement and associated Affidavit fully and properly executed by Settling Plaintiff; and 2) the Joint Motion to Dismiss the Released Parties, With Prejudice, in the Litigation, properly executed by all Parties as set forth in Section III(5) below. The Parties acknowledge and agree that this Agreement and the Joint Motion to Dismiss the Released Parties with prejudice in the Litigation will be executed and the Settlement Funds, in the form of a check made payable to "Smith Stag Trust Account," will be tendered on or before██████████████.

The Released Parties expressly deny any and all liability, including any liability for personal, physical, non-physical, exemplary or punitive damages to the Settling Plaintiff. Settling Plaintiff hereby acknowledges receipt of the Settlement Funds for their current, past and future damages on account of personal injuries or physical and/or mental injuries or physical sickness or death allegedly resulting from the claims and allegations made or that could have been made in the Litigation. Settling Plaintiff expressly acknowledges that he/she is not entitled to recover any sums for exemplary, punitive or non-physical damages. Nonetheless, the Parties agree that the consideration paid pursuant to this Agreement includes a release and dismissal of all Settling Plaintiff's current, past and future claims, including the Litigation, all of which is referred to as the "Released Claims" as defined in Section III(2).

2.     **RELEASE OF SETTLING PLAINTIFF'S CLAIMS.**  In consideration of the payment of $███████████████████ to the Settling Plaintiff, by and/or on behalf of the Released Parties, receipt of said individual sums being hereby acknowledged by the Settling Plaintiff and due acquittance and discharge therefor granted, Settling Plaintiff, for him or herself, and his or her predecessors, successors, estates, beneficiaries, assigns, and personal representatives, do hereby release, remise, and forever discharge the Released Parties of and from any and all liability, rights, demands, claims, liens, remedies, debts, injuries, causes of action, obligations, suits and damages of whatever nature or kind, known or unknown, foreseen or unforeseen, contingent, nascent, accrued, or otherwise, whether arising at law or in equity, by way of tort, contract, warranty, law, article, regulation, declaration, injunction, statute, subrogation, other encumbrances of any third parties (including but not limited to federal, state or other health care providers, insurance carriers, health maintenance organizations, employers or attorneys) or otherwise, whether federal, state, or local, and whether grounded in negligence, intentional tort, strict liability, absolute liability, ultrahazardous liability, wanton or reckless conduct, vicinage, intentional acts, assault, battery, vicarious liability or derivative liability, or under any other legal theory whatsoever, which Settling Plaintiff had in the past, have now or which they may hereafter acquire, arising out of, or in any way related to the Litigation, or the facts, transactions, or occurrences underlying the Litigation, or the claims or allegations contained therein or that could or may otherwise have been asserted therein, or the conduct or fault of the Released Parties, or any other liability legally asserted or assertable by the Settling Plaintiff, including without limitation:  all rights, claims, demands, or causes of action for compensatory damages, fear, fright, mental anguish, emotional distress, embarrassment, psychological injury, post-traumatic stress disorder, pain, suffering, loss of enjoyment of life, loss of quality of life, medical expenses, hospital expenses, rehabilitation, disability, disfigurement, personal injury, death, funeral expenses, economic loss, loss of income, lost earning capacity, loss of earnings, loss of consortium, loss of support, love and affection, loss of chance of survival, loss of inheritance, medical monitoring, property damage, diminution, and/or complete loss of property values, wrongful death claims (including, but not limited to, claims for the wrongful death of Charles R. Lookhoff, survival action claims (including but not limited to, claims for Charles R. lookhoff), workers' compensation benefits of any kind, consequential damages, economic damages,

punitive damages, exemplary damages, double damages, treble damages, bad faith, hedonic damages, cleanup costs, response costs, remediation expenses, oversight costs, consultant and/or expert witness fees, fines, penalties, interest, interventions, attorneys' fees, legal fees, litigation or investigation expenses of any kind, or any other loss, damages, costs, fees, or expenses of any kind, arising out of or related to alleged presence of and/or exposure to NORM, TERM, TENORM, volatile organics, lead, asbestos, or any allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant in any manner or fashion, including any such substances allegedly transported to or from, produced at, processed at, originating on, or present at any time on, in, under, near, or emanating from the ITCO yard(s), OFS, Inc. yard(s), Alpha Technical Services, Inc. yard(s), Brown & Root, Inc. yard(s), Bredero Price Company yard(s) and/or Halliburton Energy Services, Inc. yard(s), and any or all other locations or work sites where Settling Plaintiff worked or visited, where any type of oilfield pipe or equipment, whether new or used, was serviced, cleaned, inspected, stored or handled, whether such exposure is alleged to be direct exposure, bystander exposure, or indirect exposure.  In the event the Settling Plaintiff develops cancer or any other disease or malady in the future and/or dies from their alleged direct exposure, bystander exposure or indirect exposure, the claims released as a part of this settlement expressly include, without limitation, all past, present, and future claims, demands, actions, liabilities and causes of action for his/her own claims as well as suits constituting a survival action and/or derivative claims arising before or after their death, as well as all those encompassed within a claim for wrongful death, including without limitation, loss of consortium, loss of love and affection, loss of society and companionship, loss of nurture and guidance, loss of performance of material or personal services, loss of financial support, loss of aid and assistance, and loss of inheritance, succession or estate, related to Settling Plaintiff's alleged exposure (hereinafter collectively, the "Released Claims").

The Settling Plaintiff further understands and agrees that his/her mental and physical condition and all damages may be or may become worse than they are or seem to be at present. In executing this Agreement, the Settling Plaintiff acknowledges that all past, present and future claims against each of the Released Parties are conclusively and absolutely extinguished and forever terminated by this Agreement, and the Settling Plaintiff agrees that the terms for disbursement of the Payments described in Section III(1), including payment of any costs or attorney's fees associated with the representation of the Settling Plaintiffs, are solely a matter of agreement between the Settling Plaintiff and their counsel, and that neither disagreement nor dispute between the Settling Plaintiff and any attorneys or others who might have claims to share in the consideration rendered in exchange for the releases granted herein, nor any disagreement as to the distribution or disbursement of the payments described in Section III(1), shall ever serve as a basis to alter the absolute and final release of Released Claims on behalf of the Settling Plaintiff in favor of the Released Parties under this Agreement.  Settling Plaintiff understands and agrees that the Released Parties will never have to pay further consideration or money to the Settling Plaintiff in any capacity or to anyone else arising out of the Released Claims.

3.     **INDEMNITY.**  Settling Plaintiff hereby warrants that he/she is the only party entitled to assert claims for damages arising out of, or directly or indirectly resulting from Settling Plaintiffs' alleged respective exposures to NORM, TERM, TENORM, lead, asbestos, volatile organics, and/or any other allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant transported to or from, produced at, processed at, originating on, or present at any time on, in, under, near, or emanating from the ITCO yard(s), OFS, Inc. yard(s), Alpha Technical Services, Inc. yard(s), Brown & Root, Inc. yard(s), Bredero Price Company yard(s), Halliburton Energy Services, Inc. yard(s), and/or any or all other pipe yards, work sites or other locations where Settling Plaintiff worked or visited and where oilfield pipe or equipment was serviced, cleaned, inspected, stored or handled, and they do hereby bind and obligate themselves, their successions and/or estates, and any of their heirs, beneficiaries, assignees, and/or subrogees to protect, hold harmless, and indemnify the Released Parties from and against any and all past, present, or future claims, demands, suits, causes of action, rights of action, liabilities, liens, or judgments of any kind whatsoever arising out of or related directly or indirectly in any matter whatsoever to the Released Claims, including without limitation, any and all claims asserted or that could have been asserted in the Litigation, any of the facts or circumstances underlying the Litigation, and any claims related to or arising out of Settling Plaintiffs' alleged exposure to NORM, TERM, TENORM, lead, asbestos, volatile organics, or any allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant whether such exposure was or is direct, bystander, or indirect exposure, and

including Settling Plaintiff's existing or potential future cancer, survival action and wrongful death claims.

This indemnity obligation expressly includes, without limitation, any and all claims, demands, suits, causes of actions, rights of action, liabilities, liens or judgments of any kind for 1) attorneys' fees, legal fees, costs, and/or expenses, and 2) medical fees, costs, liens, reimbursements and/or expenses.

The Settling Plaintiff specifically declares that he/she is and will be solely responsible for the payment of any and all healthcare expenses and the repayment or reimbursement to any person or entity having paid any or part of any healthcare expenses, including, but not limited to, the reimbursement of Medicare and Medicaid. If any rights or claims of the Settling Plaintiff arising out of the facts, as alleged in the litigation, have been assigned, subrogated or transferred or if any lien, privileges or claims for medical services are asserted, exist or arise in the future, including, but not limited to, Medicare and Medicaid, claims by anyone in possession of legal or conventional rights of subrogation, or any state supported or charity hospital under LSA-R.S. 9:4753 et. seq. and/or LSA-R.S. 46:8 et. seq. or their assignees, Settling Plaintiff agrees to indemnify, defend and hold harmless the Released Parties, including counsel representing the Released Parties in the Litigation, from any claims that may be made against the Released Parties because of such assignment, subrogation, lien, privilege or other right to payment, including but not limited to, claims for medical expenses and civil penalties for failure to comply with LSA-R.S. 46:446.1 or any other applicable law or regulation.

4. **SPECIFIC CONSIDERATION OF MEDICARE'S INTEREST.** This Agreement is intended to resolve a dispute between Settling Plaintiff and the Released Parties. It is not the intention of the parties or the purpose of the Agreement to shift responsibility for payment of medical expenses for the treatment of injury, or illness giving rise to the Litigation, including future medical benefits, to any other party or entity, including the Federal Government, the Medicare System, or the Centers for Medicare and Medicaid Services ("CMS"). The Settling Plaintiff and his/her counsel acknowledge and agree that the Parties have taken reasonable steps, from the beginning of the Litigation, to protect the interests, if any, of Medicare. In the event the Settling Plaintiff is/was Medicare enrolled and/or eligible, the Settling Plaintiff and his/her counsel represent and warrant that they are aware of Medicare's potential interest in this settlement to the extent Medicare has made any conditional payments for medical services or items received by the Settling Plaintiff or the decedent and/or to the extent the Settling Plaintiff may incur additional expenses for medical services or items in the future, pursuant to 42 U.S.C. §1395(y)(b) and the rules and regulations promulgated thereunder (hereinafter collectively "MSP") and related to the accident, injury, or illness giving rise to the Litigation and this settlement, and/or arising from or related to the matters forming the basis of the claims asserted by the Settling Plaintiff in the Litigation. Settling Plaintiff and his/her counsel further represent and warrant that they have provided the requisite information to the Released Parties, their attorneys and insurers necessary to comply with the mandatory reporting obligations of the MSP, if any.

Settling Plaintiff and his/her counsel represent and warrant that to the extent required by MSP, they assume the duty to notify Medicare and/or its Coordination of Benefits Contractor of the accident, injury and/or illnesses, and claims that Settling Plaintiff asserted in the Litigation and which give rise to this settlement. Settling Plaintiff and his/her counsel further represent and warrant that, should any obligation to notify or reimburse Medicare exist, they will, within an appropriate and/or mandated amount of time after the receipt of the settlement sums by Settling Plaintiff's counsel, reimburse Medicare for any conditional payments related to the accident, injury or illnesses giving rise to the Litigation and the settlement and/or related to the matters forming the basis of the claims asserted by the Settling Plaintiff in the Litigation to the extent required by MSP. Settling Plaintiff and his/her counsel further acknowledge and agree that, to the extent required by MSP, it is their sole responsibility, and not the responsibility of the Released Parties or their attorneys or insurers, to reimburse Medicare for any conditional payments made by Medicare on behalf of the Settling Plaintiff. Settling Plaintiff and his/her counsel specifically warrant and represent that, should any liens, claims and subrogated interest of whatever nature or character asserted or potentially asserted by Medicare exist, arising from or related to the matters forming the basis of the Settling Plaintiff's claims associated in this Litigation, such liens, claims, and subrogated interests of whatever nature or character have been, or will be, resolved and satisfied by Settling Plaintiff and his/her counsel prior to distribution of any of the Settlement Funds to the Settling Plaintiff.

- 5 -

Settling Plaintiff's counsel specifically warrant and represent that they will hold the Settlement Funds in an escrow account or client trust account without distributing the same to the Settling Plaintiff or to any person or entity until Medicare's interest in its prior conditional payments, if any, arising from or related to the matters forming the basis of the Settling Plaintiff's claims as asserted in the Litigation, have been satisfied or waived and demonstrated by proof of lien satisfaction or waiver and a written release executed by Medicare as described below.

The Settling Plaintiff and his/her counsel specifically warrant and represent that, if applicable, they will obtain a full waiver and/or satisfaction and release from Medicare of any and all liens, claims, demands, subrogated interests and/or causes of action of whatever nature asserted or potentially asserted by Medicare, if any, arising from or related to the matter forming the basis of the Settling Plaintiff's claims as asserted in the Litigation. Settling Plaintiff and his/her counsel further specifically warrant and represent that, if applicable, prior to distributing any part of the settlement sum to the Settling Plaintiff or any other person or entity, the Settling Plaintiff will provide to the Released Parties and their attorneys written documentation from Medicare proving waiver and/or of satisfaction and release of Medicare's interest arising from, or related to prior conditional payments, if any, made in connection with the matters forming the basis of Settling Plaintiff's claims as asserted in the Litigation.

Settling Plaintiff and his/her counsel further warrant and represent that, if applicable, and in order to protect Medicare's interest regarding potential future medical treatment regarding any of Settling Plaintiff's injuries or illnesses as asserted in the Litigation, they have agreed to set aside an appropriate estimated amount in a Medicare Set Aside account ("MSA"), which the Settling Plaintiff will self-administer for the sole purpose of paying for any potential future medical treatment. There is a legitimate dispute on legal and medical causation of the Settling Plaintiff's accidents, injuries and/or illnesses in this case based on the alleged versus factually established exposure of each of the Settling Plaintiffs to hazardous materials as asserted in the Litigation, the length of time of the alleged exposure and actual affect of exposure on the human body, as outlined in Settling Plaintiff's respective medical records and the expert opinions obtained throughout the course of the Litigation.

The Parties acknowledge and understand that any present or future action or decision by CMS or other Medicare/Medicaid services, on the Settling Plaintiff's eligibility or entitlement to Medicare/Medicaid or Medicare/Medicaid payments, will not render this release void or ineffective.

Settling Plaintiff agrees to indemnify, defend, and hold Released Parties harmless from any action by Medicare/Medicaid seeking payment of past, current, or future medical expenses for the Settling Plaintiff. Settling Plaintiff shall further hold Released Parties harmless from any and all adverse consequences in the event this settlement results in the loss of right to Social Security and/or Medicare/Medicaid benefits to the extent Settling Plaintiff would have been entitled to those benefits in the absence of this Settlement Agreement.

Settling Plaintiff further agrees to waive any and all future actions against Released Parties, including, but not limited to any private cause of action for damages pursuant to 42 U.S.C. §1395y(b)(3)(A) et. seq.

5.      DISMISSAL OF CLAIMS WITH PREJUDICE.  For and in consideration of the aforesaid payment, and the releases contained in this Agreement, Settling Plaintiff hereby instructs his/her attorneys, Stuart Smith, Esq., Robert McMillan, Esq. and/or Michael Stag, Esq., to dismiss with prejudice the Settling Plaintiff's claims against the Released Parties asserted in the Litigation, with each Party to bear their own respective attorney fees and costs. Settling Plaintiff further agrees to cooperate with the Released Parties to obtain dismissals with prejudice from any and all claims released in Section III(2) that may be asserted against the Released Parties by any other Person.

6.      NO RELEASE OF THIRD PARTIES.  It is expressly understood and agreed that nothing herein shall be taken to release any of the Settling Plaintiff's claims against any other non-settling party in the Litigation or otherwise, except as otherwise provided herein.

7.      NO ASSIGNMENT.  Settling Plaintiff represents and warrants that he/she is the sole owner of all claims, rights, causes of action and demands that are intended to be released and

which are in fact released pursuant to this Agreement, and that to Settling Plaintiff's knowledge, no Person other than Settling Plaintiff has any legitimate interest in any such claims, rights, causes of action or demands.

8.    **RIGHTS AND BENEFITS CONFERRED.**  This Agreement is intended to confer rights and benefits only on the Parties hereto and the Released Parties and is not intended to confer any right or benefit upon any other Person.  No Person other than Settling Plaintiff and the Released Parties shall have an enforceable right under this Agreement.  The Parties do not intend by this Agreement to make any Person a "third-party beneficiary," nor to create any "*stipulation pour autrui*" in favor of any third party.  All rights and/or causes of action for any breach of this Agreement are reserved to Settling Plaintiff and the Released Parties.

9.    **HEADINGS AND TERMS.**  The headings of Paragraphs are designed to facilitate ready reference to the subject matter and shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.  The terms of this Agreement are contractual.

10.    **CONTRA PROFERENTEM WAIVED.**  The Parties have taken into consideration the risks, costs, and uncertainty of further litigation, the possibility that Settling Plaintiff may have other claims or damages of which they are not aware or which have not yet occurred, including existing or future potential cancer, survival action and/or wrongful death claims, their potential recovery, and the possibility that they may recover nothing.  This Agreement is a product of arms-length negotiation and was drafted by counsel for the respective Parties.  There shall not be a presumption or a construction against any signatory, each such signatory expressly waiving the doctrine of *contra proferentem* with respect to the interpretation and application of the Agreement.  The Parties further agree to cooperate in demonstrating to the Court, should the issue arise, that the language contained herein is the language agreed upon by the Parties as best reflecting the agreement negotiated between them.

Settling Plaintiff expressly acknowledges that after discussing his/her claims with counsel of his/her own choosing and in executing this Receipt, Release and Indemnification Agreement, that he/she is aware that he/she is completely giving up and discharging any and all rights he/she might have against the Released Parties arising out of or in any way related to the Litigation or the facts, transactions, or occurrences underlying the Litigation, and all damages, injuries, claims, rights, causes of action or conditions as aforesaid, resulting from Settling Plaintiff's alleged exposures to radiation, NORM, TERM, TENORM, lead, asbestos, volatile organics, or any allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant including any such substances allegedly transported to or from, produced at, processed at, originating on, or present at any time on, in, under, near, or emanating from the ITCO Yard(s), OFS, Inc. Yard(s), Alpha Technical Services, Inc. Yard(s), Brown & Root, Inc Yard(s), Bredero Price Company Yard(s), Halliburton Energy Services, Inc. Yard(s) or any other pipe yards, work sites or locations where Settling Plaintiff worked or visited where any type of oilfield pipe or equipment, whether new or used, was serviced, cleaned, inspected, stored or handled, and that they may never again proceed against the Released Parties in the event that he/she discovers additional causes of action related to these matters in the future or in the event additional causes of action accrue to them in the future, including existing or potential future cancer claims, survival action and/or wrongful death claims accruing upon the death of Settling Plaintiff and that they are of the opinion that this settlement is reasonable and proper under the circumstances.

11.    **FORMATION AND USE OF AGREEMENT.**  The Parties agree that the aforesaid Settlement Funds are tendered by the Released Parties without any admission of liability on their part, and are made purely by way of compromise and settlement of disputed claims.  The Parties further acknowledge that nothing contained in the Agreement constitutes an admission or any evidence that the Released Parties or any other defendant breached any obligation, or engaged in any wrongdoing or incurred liability of any kind.  This Agreement shall not be considered an admission of liability or responsibility by the Released Parties, or any other defendant, who continue to deny such liability and disclaim such responsibility.

The Parties specifically acknowledge and admit that this Agreement shall be considered an offer to compromise and a compromise within the meaning of Federal Rule of Evidence 408, Louisiana Code of Evidence Rule 408, and any equivalent rule of evidence of any state, and shall not be offered or received into evidence in any action, court proceeding or administrative

proceeding as an admission or concession of liability or wrongdoing on the part of any Released Party.

12.     **MODIFICATION.**  This Agreement may not be amended or otherwise modified except by a writing that is signed by the duly authorized representatives of all Parties.

13.     **CONFIDENTIALITY.**  It is agreed that the terms of this Agreement are confidential. Settling Plaintiff agrees to take all steps within their control to insure that the terms of this Agreement are not disclosed to any third-parties by them or by their counsel.  Counsel for Settling Plaintiff shall promptly contact undersigned counsel for KBR, Inc. should any third party seek to obtain a copy of this Agreement or discover any of its terms.

14.     **AUTHORIZATION/COUNTERPARTS.**  Settling Plaintiff represents and warrants that, with respect to all matters pertaining to this Agreement, he/she is of the full age of majority, is legally competent, and/or is the proper person to sign this Agreement and that he/she has the authority to execute and to legally bind themselves to it.  Each term of this Agreement is binding on the Settling Plaintiff and his/her predecessors, successors, agents, assigns, transferees, and personal representatives.  This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument.  A photocopy of this Agreement and the signatures of the Parties herein shall have the same force and effect as the original and the Parties hereto may rely upon a photocopy of this Agreement as if it were an original.

15.     **ENTIRE AGREEMENT.**  This Agreement is part of a global settlement to resolve all claims asserted or that could have been asserted in the Litigation and contains the entire agreement between the Parties herein.  There are no other understandings or agreements, oral or otherwise, between the Parties except as expressly set forth herein.  This Agreement supersedes any prior oral or written agreement, understandings, discussions, negotiations, offers of judgment or statements concerning the subject matter hereof.

16.     **READING OF THE AGREEMENT.**  In entering into this Agreement, the Settling Plaintiff represents that he/she has completely read all of the terms of the Agreement, that he/she fully understands and voluntarily accepts such terms, and that he/she has been adequately represented and counseled by their attorney(s) of choice with respect to all terms herein.

17.     **EVIDENCE OF AGREEMENT.**  This Agreement will not be binding on or constitute evidence of an agreement until Settling Plaintiff hereto affixes his/her respective signatures to this document and to the associated Affidavit.

18.     **CONTROLLING LAW.**  The Parties agree that the validity and interpretation of this Agreement and any of the terms or provisions thereof, as well as the rights and duties of the Parties thereunder, shall be governed solely by the internal laws of the State of Louisiana, without regard to choice of law provisions, and any applicable Federal laws, entirely independent of the laws of any forum where it may subsequently be the subject of judicial construction and/or enforcement.

          **IN WITNESS WHEREOF,** this instrument has been executed in multiple originals in the presence of the undersigned witnesses this _____ day of _____, 2012:

          By:        _____
                     Settling Plaintiff

                     _____(print name)

WITNESSES:
1.     _____
       _____(print name)

2.     _____
       _____(print name)

SWORN TO AND SUBSCRIBED BEFORE ME THIS _____ DAY OF _____, 2012.

                     _____

- 8 -

NOTARY PUBLIC
(Print Name and Bar Roll Number)

WITNESSED
BY:

KBR, Inc.
BY: Daniel G. Rauh (#27280)
TITLE: Attorney of Record

_____
Germaine Galjour (print name)

WITNESSED
BY:

Counsel of Record for Settling Plaintiff
BY:  Robert D. McMillin (#29341)
TITLE:  Attorney of Record

_____
_____(print name)

- 9 -

**AFFIDAVIT**

STATE OF LOUISIANA
PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public, in and for the aforesaid Parish and State, personally came and appeared MARY ELLEN LOOKHOFF (as natural and legal tutrix of her minor son, PATRICK LOOKHOFF, (SSN——————, DOB——————), who, after being duly sworn and upon personal knowledge, did declare and state that:

He/She is a person of the full age of majority; that he/she has read the above and foregoing Confidential Receipt, Release and Indemnification Agreement [comprised of nine (9) pages total including the signature blocks], and this Agreement has been explained to him/her in full by his/her attorneys, Stuart Smith, Esq., Michael Stag, Esq. and/or Robert McMillan, Esq.; that he/she is fully aware that he/she is giving up all of his/her present and future legal rights against the Released Parties arising out of or in any way related to the Litigation styled *James Bailey, et al., v. Exxon Mobil Corporation, et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2003-14235, Division "B-15"; *Malvin D. Benoit, et al. v. Intracoastal Tubular Services, Inc., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2001-21094, Division "B"; *Barbara Castell v. ExxonMobil Corporation, et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2002-12334, Division "A-5"; *Cynthia Waller v. Chevron U.S.A., Inc., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2008-05619, Division "L-6", and *"Levi Coleman v. H. C. Price, Co., et al."* Civil District Court for the Parish of Orleans, State of Louisiana, No. 2006-3097, Division "L-6" (later removed to the United States District Court for the Eastern District of Louisiana, Docket No. 11-2937), and all damages resulting from exposure to radiation of any kind, type or description, including NORM, TERM and/or TENORM, lead, asbestos, volatile organics, or any allegedly hazardous, toxic, dangerous, carcinogenic, [or harmful substance, material or contaminant, including any such substances allegedly transported to or from, produced at, processed at, originating on, or present at any time on, in, under, near, or emanating from the ITCO yard(s), OFS, Inc. yard(s), Alpha Technical Services, Inc. yard(s), Brown & Root, Inc. yard(s), Halliburton Energy Services, Inc. yard(s), Bredero Price Company yard(s), or any other pipe yards or locations where he/she worked and/or where oilfield pipe or equipment was serviced, cleaned, inspected, stored or handled, including damages related to his/her own exposure to such substances and existing and potential future cancer, survival action and/or wrongful death claims all as more fully set forth in the attached Agreement, and that he/she is satisfied to give up those rights in exchange for the total sum of $——————————————— payable by the Released Parties by check made payable to "Smith Stag Trust Account"; that he/she is solely responsible for his/her own attorneys' fees and litigation costs; and that he/she is authorized to and has executed the Confidential Receipt, Release and Indemnification Agreement of his/her own voluntary, free act and deed, without duress of any kind, in the presence of witnesses whose names are subscribed thereon.

He/She further understands that the terms of the Confidential Receipt, Release and Indemnification Agreement are confidential and are not to be disclosed to any third-parties by him/her or by his/her counsel.

_____
Mary Ellen Lookhoff, for PATRICK
LOOKHOFF
_____
(SSN ————————)
_____
(DOB ————————)

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _____ DAY OF
_____ , 2012

_____
NOTARY PUBLIC
_____ (print name)
_____ (Bar Roll No.)

## RECEIPT, RELEASE AND INDEMNIFICATION AGREEMENT

This Receipt, Release and Indemnification Agreement is entered into by and between the **Settling Plaintiffs** (as defined in Paragraph F below) and the **Released Parties** (as defined in Paragraph G below), on the date(s) set forth herein and in accordance with the following terms and conditions:

## I.   DEFINITIONS

Throughout this Agreement and in the following Recitals, the following definitions apply:

A.    The term "Agreement" shall mean this Receipt, Release and Indemnification Agreement.

B.    The term "Naturally Occurring Radioactive Material" ("NORM") as used in this Agreement shall mean any nuclide that is radioactive in its natural physical state (*i.e.*, not man-made) and shall include "Technologically Enhanced Natural Radioactive Material," "Technologically Enhanced Radioactive Material," and all similar substances or matter.

C.    The term "the Litigation" as used in this Agreement shall mean the matters styled *James Bailey, et al., v. Exxon Mobil Corporation, et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2003-14235, Division "B-15"; *Malvin D. Benoit, et al. v. Intracoastal Tubular Services, Inc., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2001-21094, Division "B"; *Barbara Castell v. ExxonMobil Corporation, et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2002-12334, Division "A-5"; *Cynthia Waller v. Chevron U.S.A., Inc., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2008-05619, Division "L-6", and *"Levi Coleman v. H. C. Price, Co., et al."* Civil District Court for the Parish of Orleans, State of Louisiana, No. 2006-3097, Division "L-6". "The Litigation" shall also include any other litigation arising out of the facts and circumstances underlying these lawsuits, including without limitation, any substitute or successor lawsuit or any claim to recover workers' compensation benefits and/or medical liens.

D.    The term "Parties" as used in this Agreement shall mean Settling Plaintiffs (as defined in Paragraph F) and Released Parties (as defined in Paragraph G).

E.    The term "Person" as used in this Agreement shall mean any individual, corporation, firm, partnership, Limited Liability Company, unincorporated association, organization, governmental unit, sole providership, trust or any other entity, or state, guardian, or beneficiary thereof, recognized in law or in fact to have rights or obligations.

F.    The term "Settling Plaintiffs" as used in this Agreement shall mean: **Mary Ellen Lookhoff (Natural Mother), as tutrix and on behalf of the minor child Patrick Lookhoff (Minor), (Social Security No. ▮▮▮▮▮▮); (Date of Birth ▮▮▮▮▮).**

G.    The term "Released Parties" as used in this Agreement shall mean Halliburton Company and Halliburton Energy Services, Inc.  In addition to Halliburton Company and Halliburton Energy Services, Inc., the term "Released Parties" shall also include Halliburton Company and Halliburton Energy Services, Inc.'s current or former agents, servants, brokers, contractors, subcontractors, employees, employers, officers, directors, managers, shareholders, administrators, managers, attorneys, representatives, insurers, reinsurers, underwriters, and, to the extent not named in the Petition for Damages and all supplements and amendments thereto in the Litigation, each of their predecessors, successors, parents, affiliates, brother or sister corporations, and/or related subsidiary companies or corporations, unincorporated divisions, assigns, indemnitees, co-owners, partners, general partners, joint venturers and/or limited partners, and any Person for which any of them is or may be liable, whether in contract or tort, and all Persons acting by, through, or under any of them, without limitation (whether specifically named or otherwise included under this paragraph).  It is expressly agreed that the release of contractors, subcontractors, insurers, reinsurers and underwriters herein is solely to the extent that they provided services or insurance to the "Released Parties", but the term "Released Parties" does not include any non-settling contractor, subcontractor, insurer, reinsurer or underwriter whose liability is not derived from providing services or insurance to the Released Parties.

- 1 -

H.    The term "Settlement Funds" as used in this Agreement shall mean the amount of consideration stated in Section III of this Agreement.

## II.    RECITALS

The following recitals are descriptive only and shall not be construed as admissions or as part of the operative terms of this Agreement.  All terms used in the recitals are to be construed in accordance with the Definitions provided in Section I.

**WHEREAS**, Settling Plaintiffs were allegedly exposed to NORM, TENORM and other hazardous, toxic and carcinogenic materials while working in various jobs, including but not limited to pipe cleaner, inspector, truck driver and supervisor, during the cleaning, handling, storage, and/or transportation of many different pipes, both new and used oil field equipment and tubing at various pipeyards, including but not limited to, the Intracoastal Tubular Services, Inc. (ITCO) pipeyards, the Halliburton Energy Services, Inc. yard in Harvey, Louisiana, the Bredero Price Company service yard in Harvey, Louisiana, the Brown & Root, Inc. and/or KBR, Inc. service yard in Belle Chasse, Louisiana, and possible other locations located in Southeast Louisiana;

**WHEREAS**, such exposures allegedly caused Settling Plaintiffs to get sick and/or contract certain diseases or illnesses.

**WHEREAS**, as a result of these alleged exposures, suits were filed against various oil company defendants, various pipeyard defendants and other defendants including the Released Parties herein, which actions were styled *James Bailey, et al., v. Exxon Mobil Corporation, et al.*, Docket No. 2003-14235, Civil District Court for the Parish of Orleans, State of Louisiana, Division "B-15"; *Malvin D. Benoit, et al. v. Intracoastal Tubular Services, Inc., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2001-21094, Division "B"; *Barbara Castell v. ExxonMobil Corporation, et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2002-12334, Division "A-5"; *Cynthia Waller v. Chevron U.S.A., Inc., et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, No. 2008-05619, Division "L-6", and *"Levi Coleman v. H. C. Price, Co., et al."* Civil District Court for the Parish of Orleans, State of Louisiana, No. 2006-3097, Division "L-6";

**WHEREAS**, Settling Plaintiffs have maintained the Litigation and have therein asserted claims for damages.  The Released Parties have filed responsive pleadings denying liability and denying that Settling Plaintiffs were exposed to any harmful substance, including but not limited to, NORM and TENORM while working at or visiting the ITCO, Brown & Root, Inc., Bredero Price Company, Halliburton Energy Services, Inc., Halliburton Company, yards or any other location;

**WHEREAS**, the Parties now desire and intend to fully and finally settle all disputes, controversies, and claims that presently exist or that ever could be made concerning the subject matter of the Litigation, including without limitation, Settling Plaintiffs' exposure to NORM, TENORM, volatile organics, or any allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant, and any existing or potential future cancers, survival actions and/or wrongful death claims arising from such alleged exposures to themselves, and thereby avoid the expense, inconvenience and distraction of further litigation; and

**WHEREAS**, The Parties agree that nothing contained in this Agreement constitutes an admission or any evidence that the Released Parties breached any obligation, or engaged in any wrongdoing or incurred liability of any kind, and that this settlement shall not be considered an admission of fault, liability or responsibility by the Released Parties, who continue to deny such liability and disclaim such responsibility.

In consideration of and in reliance upon the Definitions, promises, covenants, understandings and obligations set forth in this Agreement, the Parties hereto mutually agree as follows:

## III.   TERMS OF AGREEMENT

1.    **CONSIDERATION TO SETTLING PLAINTIFFS.**  The Released Parties agree to pay the following amount to Settling Plaintiffs:

- 2 -

### PATRICK LOOKHOFF, MINOR

This total consideration of �_____ ▟ DOLLARS is provided in exchange for the following documents and acts: 1) this Receipt, Release and Indemnification Agreement properly executed by Settling Plaintiffs and 2) the Joint Motion to Dismiss the Released Parties, With Prejudice, in the Litigation, properly executed by all Parties as set forth in Section III(4) below.

The Released Parties expressly deny any and all liability, including any liability for personal, physical, non-physical, exemplary or punitive damages to the Settling Plaintiffs. Settling Plaintiffs hereby acknowledge receipt of the Settlement Funds for their current, past and future damages on account of personal injuries or physical and/or mental injuries or physical sickness or death allegedly resulting from the claims and allegations made or that could have been made in the Litigation. Settling Plaintiff expressly acknowledges that they are not entitled to recover any sums for exemplary, punitive or non-physical damages. Nonetheless, the Parties agree that the consideration paid pursuant to this Agreement includes a release and dismissal of all Settling Plaintiffs' current, past and future claims, including the Litigation, all of which is referred to as the "Released Claims" as defined in Section III(2).

2.      **RELEASE OF SETTLING PLAINTIFF'S CLAIMS.** In consideration of the payment of ▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀ DOLLARS to the Settling Plaintiffs, by or on behalf of the Released Parties, receipt of said individual sums being hereby acknowledged by Settling Plaintiffs and due acquittance and discharge therefor granted, Settling Plaintiffs, for themselves, their predecessors, successors, estates, beneficiaries, assigns, and personal representatives, do hereby release, remise, and forever discharge the Released Parties of and from any and all liability, rights, demands, claims, liens, remedies, debts, injuries, causes of action, obligations, suits and damages of whatever nature or kind, known or unknown, foreseen or unforeseen, contingent, nascent, accrued, or otherwise, whether arising at law or in equity, by way of tort, contract, warranty, law, article, regulation, declaration, injunction, statute, subrogation, other encumbrances of any third parties (including but not limited to federal, state or other health care providers, insurance carriers, health maintenance organizations, employers or attorneys) or otherwise, whether federal, state, or local, and whether grounded in negligence, intentional tort, strict liability, absolute liability, ultrahazardous liability, wanton or reckless conduct, vicinage, intentional acts, assault, battery, vicarious liability or derivative liability, or under any other legal theory whatsoever, which Settling Plaintiffs had in the past, have now or which they may hereafter acquire, arising out of, or in any way related to the Litigation, or the facts, transactions, or occurrences underlying the Litigation, or the claims or allegations contained therein or that could have been asserted therein, or the conduct or fault of the Released Parties, or any other liability legally asserted or assertable by Settling Plaintiffs, including without limitation: all rights, claims, demands, or causes of action for compensatory damages, fear, fright, mental anguish, emotional distress, embarrassment, psychological injury, post-traumatic stress disorder, pain, suffering, loss of enjoyment of life, loss of quality of life, medical expenses, hospital expenses, rehabilitation, disability, disfigurement, personal injury, death, funeral expenses, economic loss, loss of income, lost earning capacity, loss of earnings, loss of consortium, loss of support, love and affection, loss of chance of survival, loss of inheritance, medical monitoring, property damage, diminution, and/or complete loss of property values, wrongful death claims, including but not limited to, claims for Charles Lookhoff, survival action claims, including, but not limited to, claims for Charles Lookhoff's survival damages, workers' compensation benefits of any kind, consequential damages, economic damages, punitive damages, exemplary damages, double damages, treble damages, bad faith, hedonic damages, cleanup costs, response costs, remediation expenses, oversight costs, consultant and/or expert witness fees, fines, penalties, interest, interventions, attorneys' fees, legal fees, litigation or investigation expenses of any kind, or any other loss, damages, costs, fees, or expenses of any kind, arising out of or related to alleged presence of and/or exposure to NORM, TENORM, volatile organics, lead, asbestos, or any allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant in any manner or fashion, including any such substances allegedly transported to or from, produced at, processed at, originating on, or present at any time on, in, under, near, or emanating from the ITCO yard(s), OFS, Inc. yard(s), Alpha Technical Services, Inc. yard(s), Brown & Root, Inc. yard(s), Bredero Price Company yard(s), and Halliburton Energy Services, Inc. yard(s), and any or all other locations or work sites where Settling Plaintiffs worked or visited, where any type of oilfield pipe or equipment, whether new or used, was serviced, cleaned, inspected, stored or handled, whether such exposure is alleged to

CK_DOCS 473729v1

be direct exposure, bystander exposure, or indirect exposure.  In the event Settling Plaintiffs develop cancer in the future and/or dies from their alleged direct exposure, bystander exposure or indirect exposure, the claims released as a part of this settlement expressly include, without limitation, all past, present, and future claims, demands, actions, liabilities and causes of action for their own claims as well as suits constituting a survival action and/or derivative claims arising before or after their death, as well as all those encompassed within a claim for wrongful death, including without limitation, loss of consortium, loss of love and affection, loss of society and companionship, loss of nurture and guidance, loss of performance of material or personal services, loss of financial support, loss of aid and assistance, and loss of inheritance, succession or estate, related to Settling Plaintiffs' alleged exposure (hereinafter collectively, the "Released Claims").

The Settling Plaintiffs further understand and agree that their mental and physical condition and all of their damages may be or may become worse than they are or seem to be at present.  In executing this Agreement, the Settling Plaintiffs acknowledge that all of their past, present and future claims against each of the Released Parties are conclusively and absolutely extinguished and forever terminated by this Agreement, and the Settling Plaintiffs agree that the terms for disbursement of the Payments described in Section III(1), including payment of any costs or attorney's fees associated with the representation of the Settling Plaintiffs, are solely a matter of agreement between the Settling Plaintiffs and their counsel, and that neither disagreement nor dispute between the Settling Plaintiffs and any attorneys or others who might have claims to share in the consideration rendered in exchange for the releases granted herein, nor any disagreement as to the distribution or disbursement of the payments described in Section III(1), shall ever serve as a basis to alter the absolute and final release of Released Claims on behalf of the Settling Plaintiffs in favor of the Released Parties under this Agreement.  Settling Plaintiffs understand and agree that the Released Parties will never have to pay further consideration or money to the Settling Plaintiffs in any capacity or to anyone else arising out of the Released Claims.

3.     **INDEMNITY.**  Settling Plaintiffs hereby warrant that they are the only parties entitled to assert claims for damages arising out of, or directly or indirectly resulting from Settling Plaintiffs' alleged respective exposures to NORM, TENORM, lead, asbestos, volatile organics, and/or any other allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant transported to or from, produced at, processed at, originating on, or present at any time on, in, under, near, or emanating from the ITCO yard(s), OFS, Inc. yard(s), Alpha Technical Services, Inc. yard(s), Brown & Root, Inc. yard(s), Bredero Price Company yard(s), Halliburton Energy Services, Inc. yard(s), and any or all other pipe yards, work sites or other locations where Settling Plaintiffs worked or visited and where oilfield pipe or equipment was serviced, cleaned, inspected, stored or handled, and they do hereby bind and obligate themselves, their successions and/or estates, and any of their heirs, beneficiaries, assignees, and/or subrogees to protect, hold harmless, and indemnify the Released Parties from and against any and all past, present, or future claims, demands, suits, causes of action, rights of action, liabilities, liens, or judgments of any kind whatsoever arising out of or related directly or indirectly in any matter whatsoever to the Released Claims, including without limitation, any and all claims asserted or that could have been asserted in the Litigation, any of the facts or circumstances underlying the Litigation, and any claims related to or arising out of Settling Plaintiffs' alleged exposure to NORM, TENORM, lead, asbestos, volatile organics, or any allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant whether such exposure was or is direct, bystander, or indirect exposure, and including Settling Plaintiffs' existing or potential future cancer, survival action and wrongful death claims.

This indemnity obligation expressly includes, without limitation, any and all claims, demands, suits, causes of actions, rights of action, liabilities, liens or judgments of any kind for 1) attorneys' fees, legal fees, costs, and/or expenses, and 2) medical fees, costs, liens, reimbursements and/or expenses.

The Settling Plaintiffs specifically declare that they are and will be solely responsible for the payment of any and all healthcare expenses and the repayment or reimbursement to any person or entity having paid any or part of any healthcare expenses, including, but not limited to, the reimbursement of Medicare and Medicaid.  If any rights or claims of Settling Plaintiffs arising out of the facts, as alleged in the litigation, have been assigned, subrogated or transferred or if any lien, privileges or claims for medical services are asserted, exist or arise in the future,

including, but not limited to, Medicare and Medicaid, claims by anyone in possession of legal or conventional rights of subrogation, or any state supported or charity hospital under LSA-R.S. 9:4753 et. seq. and/or LSA-R.S. 46:8 et. seq. or their assignees, Settling Plaintiffs agree to indemnify, defend and hold harmless the Released Parties, including counsel representing the Released Parties in the Litigation, from any claims that may be made against the Released Parties because of such assignment, subrogation, lien, privilege or other right to payment, including but not limited to, claims for medical expenses and civil penalties for failure to comply with LSA-R.S. 46:446.1 or any other applicable law or regulation.

4.   **SPECIFIC CONSIDERATION OF MEDICARE'S INTEREST.**   The Settling Plaintiffs and their counsel acknowledge and agree that the Parties have taken reasonable steps, from the beginning of the Litigation, to protect the interests, if any, of Medicare. In the event the Settling Plaintiffs are/were Medicare enrolled and/or eligible, the Settling Plaintiffs and their counsel represent and warrant that they are aware of Medicare's potential interest in this settlement to the extent Medicare has made any conditional payments for medical services or items received by Settling Plaintiffs or the decedent and/or to the extent Settling Plaintiff(s) may incur additional expenses for medical services or items in the future, pursuant to 42 U.S.C. §1395(y)(b) and the rules and regulations promulgated thereunder (hereinafter collectively "MSP") and related to the accident, injury, or illness giving rise to the Litigation and this settlement, and/or arising from or related to the matters forming the basis of the claims asserted by Settling Plaintiffs in the Litigation. Settling Plaintiffs and their counsel further represent and warrant that they have provided the requisite information to the Released Parties, their attorneys and insurers necessary to comply with the mandatory reporting obligations of the MSP, if any.

Settling Plaintiffs and their counsel represent and warrant that to the extent required by MSP, they assume the duty to notify Medicare and/or its Coordination of Benefits Contractor or the accident, injury and/or illnesses, and claims for which Settling Plaintiffs asserted in the Litigation and which give rise to this settlement. Settling Plaintiffs and their counsel further represent and warrant that should any obligation to notify or reimburse Medicare exist, they will, within an appropriate and/or mandated amount of time, after the receipt of the settlement sums by Settling Plaintiffs' counsel, that they shall reimburse Medicare for any conditional payments related to the accident, injury or illnesses giving rise to the Litigation and the settlement and/or related to the matters forming the basis of the claims asserted by Settling Plaintiffs in the Litigation to the extent required by MSP.   Settling Plaintiffs and their counsel further acknowledge and agree that to the extent required by MSP, it is their sole responsibility, and not the responsibility of the Released Parties or their attorneys or insurers, to reimburse Medicare for any conditional payments made by Medicare on behalf of the Settling Plaintiffs.   Settling Plaintiffs and their counsel specifically warrant and represent that should any liens, claims and subrogated interest of whatever nature or character asserted or potentially asserted by Medicare exists, arising from or related to the matters forming the basis of the Settling Plaintiffs' claims associated in this Litigation, such liens, claims, and subrogated interests of whatever nature or character have been, or will be, resolved and satisfied by Settling Plaintiffs and their counsel prior to distribution of any of the Settlement Funds to the Settling Plaintiffs.

Settling Plaintiffs' counsel specifically warrant and represent that they will hold the Settlement Funds in an escrow account or client trust account without distributing the same to the Settling Plaintiffs or to any person or entity until Medicare's interest in its prior conditional payments, if any, arising from or related to the matters forming the basis of the Settling Plaintiffs' claims as asserted in the Litigation, have been satisfied or waived and demonstrated by proof of lien satisfaction or waiver and a written release executed by Medicare as described below.

The Settling Plaintiffs and their counsel specifically warrant and represent that, if applicable, they will obtain a full waiver and/or satisfaction and release from Medicare of any and all liens, claims, demands, subrogated interests and/or causes of action of whatever nature asserted or potentially asserted by Medicare, if any, arising from or related to the matter forming the basis of the Settling Plaintiffs' claims as asserted in the Litigation. Settling Plaintiffs and their counsel further specifically warrant and represent that, if applicable, prior to distributing any part of the settlement sum to the Settling Plaintiffs or any other person or entity, the Settling Plaintiffs will provide to the Released Parties, their attorneys and their insurers, written documentation from Medicare proving waiver and/or of satisfaction and release of Medicare's interest arising from, or related to prior conditional payments, if any, made in connection with the matters forming the basis of Settling Plaintiffs' claims as asserted in the Litigation.

CK_DOCS 473729v1

Settling Plaintiffs and their counsel further warrant and represent that, if applicable, and in order to protect Medicare's interest regarding potential future medial treatment regarding any Settling Plaintiffs' injuries or illnesses as asserted in the Litigation that they have agreed to set aside an appropriate estimated amount in a Medicare Set Aside account ("MSA"), which the Settling Plaintiffs will self-administer for the sole purpose of paying for any potential future medical treatment.  There is a legitimate dispute on legal and medical causation of the Settling Plaintiffs' accidents, injuries and/or illnesses in this case based on the alleged versus factually established exposure of each of the Settling Plaintiffs to hazardous materials as asserted in the Litigation, the length of time of the alleged exposure and actual affect of exposure on the human body, as outlined in Settling Plaintiffs' respective medical records and the expert opinions obtained throughout the course of the Litigation.

The parties acknowledge and understand that any present or future action or decision by CMS or other Medicare/Medicaid services, on the Settling Plaintiffs' eligibility or entitlement to Medicare/Medicaid or Medicare/Medicaid payments, will not render t his release void or ineffective.

Settling Plaintiffs agree to indemnify, defend, and hold Released Parties harmless from any action by Medicare/Medicaid seeking payment of past, current, or future medical expenses for the Settling Plaintiffs.  Settling Plaintiffs shall further hold Released Parties harmless from any and all adverse consequences in the event this settlement results in the loss of right to Social Security and/or Medicare/Medicaid benefits to the extent Settling Plaintiffs would have been entitled to those benefits in the absence of this Settlement Agreement.

Settling Plaintiffs further agree to waive any and all future actions against Released Parties, including, but not limited to any private cause of action for damages pursuant to 42 U.S.C. §1395y(b)(3)(A) *et. seq.*

5.   **DISMISSAL OF CLAIMS WITH PREJUDICE.**  For and in consideration of the aforesaid payment, and the releases contained in this Agreement, Settling Plaintiffs hereby instruct their attorneys, Stuart Smith, Esq. and/or Michael Stag, Esq., to dismiss with prejudice the Settling Plaintiffs' claims against the Released Parties asserted in the Litigation, with each Party to bear their own respective costs.  Settling Plaintiffs further agree to cooperate with the Released Parties to obtain dismissals with prejudice from any and all claims released in Section III(2) that may be asserted against the Released Parties by any other Person.

6.   **NO RELEASE OF THIRD PARTIES.**  It is expressly understood and agreed that nothing herein shall be taken to release any of Settling Plaintiffs claims against any other non-settling party in the Litigation or otherwise, except as otherwise provided herein.

7.   **NO ASSIGNMENT.**  Settling Plaintiffs represent and warrant that they are the sole owner of all claims, rights, causes of action and demands that are intended to be released and which are in fact released pursuant to this Agreement, and that to Settling Plaintiffs' knowledge, no Person other than Settling Plaintiffs has any legitimate interest in any such claims, rights, causes of action or demands.

8.   **RIGHTS AND BENEFITS CONFERRED.**  This Agreement is intended to confer rights and benefits only on the Parties hereto and the Released Parties and is not intended to confer any right or benefit upon any other Person.  No Person other than Settling Plaintiffs and the Released Parties shall have an enforceable right under this Agreement.  The Parties do not intend by this Agreement to make any Person a "third-party beneficiary," nor to create any "*stipulation pour autrui*" in favor of any third party.  All rights and/or causes of action for any breach of this Agreement are reserved to Settling Plaintiffs and the Released Parties.

9.   **HEADINGS AND TERMS.** The headings of Paragraphs are designed to facilitate ready reference to the subject matter and shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.  The terms of this Agreement are contractual.

10.   **CONTRA PROFERENTEM WAIVED.**  The Parties have taken into consideration the risks, costs, and uncertainty of further litigation, the possibility that Settling Plaintiffs may have other claims or damages of which they are not aware or which have not yet occurred, including existing or future potential cancer, survival action and/or wrongful death claims, their potential

CK_DOCS 473729v1                               - 6 -

recovery, and the possibility that they may recover nothing.  This Agreement is a product of arms-length negotiation and was drafted by counsel for the respective Parties.  There shall not be a presumption or a construction against any signatory, each such signatory expressly waiving the doctrine of *contra proferentem* with respect to the interpretation and application of the Agreement.  The Parties further agree to cooperate in demonstrating to the Court, should the issue arise, that the language contained herein is the language agreed upon by the Parties as best reflecting the agreement negotiated between them.

Settling Plaintiffs expressly acknowledge that after discussing their claims with counsel of their own choosing and in executing this Receipt, Release and Indemnification Agreement, that they are aware that they are completely giving up and discharging any and all rights they might have against the Released Parties arising out of or in any way related to the Litigation or the facts, transactions, or occurrences underlying the Litigation, and all damages, injuries, claims, rights, causes of action or conditions as aforesaid, resulting from Settling Plaintiffs' alleged exposures to NORM, TENORM, lead, asbestos, volatile organics, or any allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant including any such substances allegedly transported to or from, produced at, processed at, originating on, or present at any time on, in, under, near, or emanating from the ITCO Yard(s), OFS, Inc. Yard(s), Alpha Technical Services, Inc. Yard(s), Brown & Root, Inc Yard(s), Bredero Price Company Yard(s), Halliburton Energy Services, Inc. Yard(s) or any other pipe yards, work sites or locations where Settling Plaintiffs worked or visited where any type of oilfield pipe or equipment, whether new or used, was serviced, cleaned, inspected, stored or handled, and that they may never again proceed against the Released Parties in the event that they discover additional causes of action related to these matters in the future or in the event additional causes of action accrue to them in the future, including existing or potential future cancer claims, survival action and/or wrongful death claims accruing upon the death of Settling Plaintiffs and that they are of the opinion that this settlement is reasonable and proper under the circumstances.

11.     **FORMATION AND USE OF AGREEMENT.**  The Parties agree that the aforesaid Settlement Funds are tendered by the Released Parties without any admission of liability on their part, and are made purely by way of compromise and settlement of disputed claims.  The Parties further acknowledge that nothing contained in the Agreement constitutes an admission or any evidence that the Released Parties or any other defendant breached any obligation, or engaged in any wrongdoing or incurred liability of any kind.  This Agreement shall not be considered an admission of liability or responsibility by the Released Parties, or any other defendant, who continue to deny such liability and disclaim such responsibility.

The Parties specifically acknowledge and admit that this Agreement shall be considered an offer to compromise and a compromise within the meaning of Federal Rule of Evidence 408, Louisiana Code of Evidence Rule 408, and any equivalent rule of evidence of any state, and shall not be offered or received into evidence in any action, court proceeding or administrative proceeding as an admission or concession of liability or wrongdoing on the part of any Released Party.

12.     **MODIFICATION.**  This Agreement may not be amended or otherwise modified except by a writing that is signed by the duly authorized representatives of all Parties.

13.     **CONFIDENTIALITY.**  It is further understood that the terms of this Agreement are confidential.  Settling Plaintiffs agree to take all steps within their control to insure that the terms of this Agreement are not disclosed to any third-parties by them or by their counsel.

14.     **AUTHORIZATION/COUNTERPARTS.**  All of the Settling Plaintiffs hereto represent and warrant that, with respect to all matters pertaining to this Agreement, they are of the full age of majority, are legally competent, and/or are the proper persons to sign this Agreement and that they have the authority to execute and to legally bind themselves to it.  Each term of this Agreement is binding on the Settling Plaintiffs and their predecessors, successors, agents, assigns, transferees, and personal representatives.  This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument.  A photocopy of this Agreement and the signatures of the Parties herein shall have the same force and effect as the original and the Parties hereto may rely upon a photocopy of this Agreement as if it were an original.

GK_DOCS 473729v1

15.   **ENTIRE AGREEMENT.** This Agreement is part of a global settlement to resolve all claims asserted or that could have been asserted in the Litigation and contains the entire agreement between the Parties herein. There are no other understandings or agreements, oral or otherwise, between the Parties except as expressly set forth herein. This Agreement supersedes any prior oral or written agreement, understandings, discussions, negotiations, offers of judgment or statements concerning the subject matter hereof.

16.   **READING OF THE AGREEMENT.** In entering into this Agreement, the Settling Plaintiffs represent that they have completely read all of the terms of the Agreement, that they fully understand and voluntarily accept such terms, and that they have been adequately represented by counsel of their choice.

17.   **EVIDENCE OF AGREEMENT.** This Agreement will not be binding on or constitute evidence of an agreement until Settling Plaintiffs hereto affix their respective signatures to this document.

18.   **CONTROLLING LAW.** The Parties agree that the validity and interpretation of this Agreement and any of the terms or provisions thereof, as well as the rights and duties of the Parties thereunder, shall be governed solely by the internal laws of the State of Louisiana, without regard to choice of law provisions, and any applicable Federal laws, entirely independent of the laws of any forum where it may subsequently be the subject of judicial construction and/or enforcement.

IN WITNESS WHEREOF, this instrument has been executed in multiple originals in the presence of the undersigned witnesses this _____ day of _____, 2012.

WITNESSES:

_____
_____ (print name)

**Mary Ellen Lookhoff (Natural Mother), as tutrix and on behalf of the minor child Patrick Lookhoff (Minor), (Social Security No. ████████); (Date of Birth ████████**

_____
_____ (print name)

SWORN TO AND SUBSCRIBED BEFORE ME THIS _____ DAY OF _____, 2012.

_____
NOTARY PUBLIC

Name: _____
Bar Roll Number: _____

**WITNESSES**

_____
_____ (print name)

Halliburton Company, Halliburton Energy Services, Inc.
BY: James A. Holmes
TITLE: Attorney of Record

_____
_____ (print name)

Settling Plaintiffs
BY: Michael G. Stag
TITLE: Attorney of Record

CK_DOCS 473729v1

## AFFIDAVIT

STATE OF LOUISIANA
PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public, in and for the aforesaid Parish and State, personally came and appeared **Mary Ellen Lookhoff (Natural Mother), as tutrix and on behalf of the minor child Patrick Lookhoff (Minor), (Social Security No.** ▆▆▆▆▆▆, (Date of Birth ▆▆▆▆▆▆, who, after being duly sworn and upon personal knowledge, did declare and state that:

She is a person of the full age of majority; that she has read the above and foregoing Receipt, Release and Indemnification Agreement, and this Agreement has been explained to her in full by her attorneys, Stuart Smith, Esq. and/or Michael Stag, Esq.; that she is fully aware that she is giving up all of his present and future legal rights against the Released Parties arising out of or in any way related to the Litigation styled *James Bailey, et al., v. Exxon Mobil Corporation, et al.,* Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2003-14235, Division "B-15"; *Malvin D. Benoit, et al. v. Intracoastal Tubular Services, Inc., et al.,* Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2001-21094, Division "B"; *Barbara Castell v. ExxonMobil Corporation, et al.,* Civil District Court for the Parish of Orleans, State of Louisiana, No. 2002-12334, Division "A-5"; *Cynthia Waller v. Chevron U.S.A., Inc., et al.,* Civil District Court for the Parish of Orleans, State of Louisiana, No. 2008-05619, Division "L-6", and *"Levi Coleman v. H. C. Price, Co., et al."* Civil District Court for the Parish of Orleans, State of Louisiana, No. 2006-3097, Division "L-6", and all damages resulting from exposure to NORM, TENORM, lead, asbestos, volatile organics, or any allegedly hazardous, toxic, dangerous, carcinogenic, or harmful substance, material or contaminant, including any such substances allegedly transported to or from, produced at, processed at, originating on, or present at any time on, in, under, near, or emanating from the ITCO yard(s), OFS, Inc. yard(s), Alpha Technical Services, Inc. yard(s), Brown & Root, Inc. yard(s), Halliburton Energy Services, Inc. yard(s), Bredero Price Company yard(s), or any other pipe yards or locations where she worked where oilfield pipe or equipment was serviced, cleaned, inspected, stored or handled, including damages related to her own exposure to such substances and existing and potential future cancer, survival action and/or wrongful death claims all as more fully set forth in the attached Agreement, and that she is satisfied to give up those rights in exchange for the total sum of ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆) DOLLARS payable by the Released Parties; and that she is authorized to and has executed this Receipt, Release and Indemnification Agreement of her own voluntary, free act and deed, without duress of any kind, in the presence of witnesses whose names are subscribed thereon.

She further understands that the terms of this Agreement are confidential and are not to be disclosed to any third-parties by her or by her counsel.

>                                              _____
>                                              **Mary Ellen Lookhoff (Natural Mother),**
>                                              **as tutrix and on behalf of the minor**
>                                              **child Patrick Lookhoff (Minor),**
>                                              **(Social Security No.** ▆▆▆▆▆▆
>                                              **(Date of Birth** ▆▆▆▆▆▆

SWORN TO AND SUBSCRIBED
BEFORE ME THIS \_\_\_\_ DAY OF
_____, 2012

_____
NOTARY PUBLIC

_____ (print name)

_____ (Bar Roll No.)

- 9 -

CK_DOCS 473729v1