# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LEVI COLEMAN, et al.,**
    **Plaintiffs**

**CIVIL ACTION**

**VERSUS**

**No. 11-2937**

**H.C. PRICE CO., et al.,**
    **Defendants**

**SECTION "E"**

## ORDER AND REASONS

Before the Court are 23 motions to dismiss: (1) two motions of defendant Tubo-FGS, LLC[1] ("Tubo-FGS") to Dismiss for Failure to State a Claim;[2] (2) two motions of defendant Weatherford International, Inc. ("Weatherford") to Dismiss for Failure to State a Claim;[3] (3) a motion of defendant Packard Pipe Terminals, LLC ("Packard Pipe") to Dismiss for Failure to State a Claim;[4] (4) two motions of defendants Anadarko OGC Company, Anadarko US Offshore Corporation, SWEPI, LP, Shell Offshore, Inc., and Shell Oil Company (the "Shell Defendants") to Dismiss for Failure to State a Claim;[5] two motions of defendants American Oil Company, Atlantic Richfield Company, and BP Products North America, Inc. ("BP Defendants") to Dismiss for Failure to State a Claim;[6] two motions of

---

[1] Plaintiffs allege Tubo-FGS, LLC is the successor to Varco, LP, Tuboscope Vetco International, Inc., Tuboscope, Inc, and AMF Tuboscope, Inc.

[2] R. Doc. 297; R. Doc. 340.

[3] R. Doc. 300; R. Doc. 339.

[4] R. Doc. 301.

[5] R. Doc. 302; R. Doc. 335.

[6] R. Doc. 304; R. Doc. 330.

defendant Total Petrochemicals USA, Inc. ("Total") to Dismiss for Failure to State a Claim;[7] two motions of defendant Patterson Truck Lines, Inc. ("Patterson") for Partial Dismissal for Failure to State a Claim;[8] two motions of defendant Hess Corporation ("Hess") to Dismiss for Failure to State a Claim;[9] two motions of defendant XH, LLC ("XH") to Dismiss for Failure to State a Claim;[10] a motion of defendant McDermott, Inc.[11] ("McDermott") to Dismiss for Failure to State a Claim;[12] two motions of defendant Intracoastal Tubular Services, Inc. ("ITCO") to Dismiss for Failure to State a Claim;[13] a motion of defendant Chevron USA, Inc.[14] ("Chevron") to Dismiss for Failure to State a Claim;[15] a motion of defendant OFS, Inc. ("OFS") to Dismiss for Failure to State a Claim and/or Summary Judgment;[16] a motion of defendant Union Oil Company of California ("Union") to Dismiss for Failure to State a Claim.[17] Plaintiffs oppose the motions.[18] Plaintiffs' Motion for Leave

---

[7] R. Doc. 305; R. Doc. 337.

[8] R. Doc. 307; R. Doc. 348.

[9] R. Doc. 309; R. Doc. 336

[10] R. Doc. 311; R. Doc. 371.

[11] Plaintiffs allege McDermott, Inc. is the successor in interest to J. Ray McDermott, Inc.

[12] R. Doc. 314.

[13] R. Doc. 316; R. Doc. 341.

[14] Plaintiffs allege Chevron, USA, Inc. is the successor to Gulf Oil Corporation, Gulf Oil Exploration & Production Company, and Texaco, Inc.

[15] R. Doc. 318.

[16] R. Doc. 324.

[17] R. Doc. 391.

[18] R. Doc. 338; R. Doc. 350; R. Doc. 375.

to File Restated and Superseding Complaint is also before the Court.[19]

## BACKGROUND

Plaintiffs in this suit are pipeyard workers and the surviving spouses and children of now deceased former pipeyard workers.[20] Plaintiffs' personal injury, wrongful death, and survival claims arise out of the workers' occupational exposure to radioactive oil field waste materials while working in various pipeyards and other facilities. Plaintiffs allege that while cleaning, handling, and inspecting oil field pipe, they were exposed to Technologically Enhanced Naturally Occurring Radioactive Materials ("TENORM"). Plaintiffs are suing

---

[19]R. Doc. 394.

[20]Plaintiffs are: Barbara Coleman, Beverly N. Marshall, Deborah Coleman Divinity, Greta A. Richardson, Jermain Coleman, Levi Coleman Jr., Romunda Coleman, Stanley Newton, Shirley Coleman Moreland, and Troy Selmon (surviving spouse and children of Levi Coleman - the "Coleman Plaintiffs"); Loretta Lee Alexie (surviving spouse of Melvin Alexie, Sr.); Tara Lopez, Ashley Austin, and Robert Austin (surviving spouse and children of Ricky A. Austin - the "Austin Plaintiffs"); Patrick Bourque; Alfreida Bradley, April A. Bradley, Dorothy W. Bradley, Earlie M. Bradley, Earl C. Bradley, Jr., Glynn R. Bradley, Mallere Bradley Edwards, Melvin Bradley, Tammy Bradley, Wyatt Bradley, and Dorothy Bradley (surviving spouse and children of Earl Bradley, Sr. - the "Bradley Plaintiffs"); Jeanette Buras, Chad Buras, Daisy Buras, Dominic Buras, Jr., Matthew Buras, Nicole Buras Bort, Paul Buras, and Randy Buras (surviving spouse and children of Dominic Buras - the "Buras Plaintiffs"); Terry Burge; Benny Davis, Edward Davis, Geraldine Joseph, Patricia McCray, and Rubin Davis, Jr. (surviving children of Rubin Davis, Sr. - the "Davis Plaintiffs"); Jimmye Edwards; Jerry Fontineau, Jr.; Anthony Franklin; Theardis Gardner; Vianna Percle (surviving child of Norbert Gregory - the "Gregory Plaintiff"); Howard Ray Griffin (surviving child of Daniel Griffin - the "Griffin Plaintiff"); Eugene Jackson; Andrew Jackson, Joe Jackson, Kasi Jackson, Sandra Jackson, and Wanda Jackson (surviving spouse and children of Andrew Jackson, Sr. - the "Jackson Plaintiffs"); Burnell Jefferson; Carol Kirby Heiser, Gary Kirby, and Glen Kirby (surviving children of James Kirby - the "Kirby Plaintiffs"); Glen R. Kirby; Timothy Kufel; Stephanie Labove, Desiree Labove, Destinee Labove, Drew Labove, Tara Labove and Tessa Labove (surviving spouse and children of Alcide Labove - the "Labove Plaintiffs"); Melvin J. Landry; William Leaumont, Sr. (surviving parent of William Leaumont, Jr. - the "Leaumont Plaintiff"); P.L (surviving child of Charles Lookhoff - the "Lookhoff Plaintiff"); Mary U. Miller, Amanda Miller, and Pierre Miller (surviving spouse and children of Pierre Miller, Sr. - the "Miller Plaintiffs"); Imogene Muckleroy, Scott Muckleroy, Steven Muckleroy and Sylvia Gray (surviving spouse and children of Charlie Muckleroy - the "Muckleroy Plaintiffs"); Celeste Pontiff and Mickey Pontiff (surviving spouse and child of Howard Wayne Pontiff - the "Pontiff Plaintiffs"); Dolores Quebedeaux, Brent Quebedeaux, Donovan Quebedeaux and Gregory Quebedeaux (surviving spousen and children of Bowsley Quebedeaux - the "Quebedeaux Plaintiffs"); Leslie Rushing; Charlene Smith, Annie Smith, Ashanti Smith and Dexter Smith (surviving spouse and children of Herman Smith - the "Smith Plaintiffs"); Terrell Smith, Gary Smith, Gregory Smith, John Smith Jr., and Rhonda McHenry (surviving spouse and children of John Smith Sr. - the "John Smith Plaintiffs"); Barbara Soape, April Soape, Chursha Soap and Kenneth Soape Jr. (surviving spouse and children of Kenneth Soape, Sr. - the "Soape Plaintiffs"); Odella Gordon, Louis Thomas, Jr., and Teshilonne Thomas (surviving spouse and children of Louis Thomas, Sr. - the "Thomas Plaintiffs"); Milton Vincent; Joseph A. Walker; Thomas Randall Walters; and Charles Walton.

ITCO, Packard Pipe, Patterson, Tubo-FGS, Weatherford (the "Pipeyard Defendants"), OFS, McDermott (the "Contractor Defendants"), the Shell Defendants, the BP Defendants, Chevron, ConocoPhillips, Co., Devon Energy Production, Co., Exxon Mobil, Co., Hess, Marathon, Total, Union Oil Company of California, and XH (the "Oil Company Defendants").

After this case was removed, certain Defendants filed motions to dismiss. In an October 2, 2012 Order and Reasons, the Court granted motions filed by the Oil Company Defendants to dismiss the survival claims of certain plaintiffs as untimely.[21] The Court denied in part Packard's motion to dismiss to the extent that it sought to dismiss the Coleman Plaintiffs' intentional tort claims.[22] Citing Magistrate Judge Knowles' order on Packard's motion for definite statement, the Court found the Coleman Plaintiffs' allegations of intentional tort were adequately pleaded under Federal Rule of Civil Procedure 12(b)(6).[23]

Magistrate Judge Knowles thereafter granted Plaintiffs leave to file an amended complaint.[24] Various Defendants filed motions to dismiss for failure to state a claim. After oral argument on defendant ACME Truck Line, Inc.'s motion to dismiss,[25] the Court ordered Plaintiffs to file a motion for leave to file a "Restated and Superseding Complaint" and

---

[21]R. Doc. 116.

[22]R. Doc. 116. The Court granted Packard's motion to the extent the Coleman Plaintiffs' other claims were barred by the Louisiana Workers' Compensation Act's exclusivity provision. *See* La. Rev. Stat. Ann. § 23:1032(B).

[23]R. Doc. 116, p. 8. Citing R. Doc. 68 (Order granting motion for more definite statement filed by Packard and the Oil Company Defendants).

[24]R. Doc. 153.

[25]The Court granted in part and denied ACME's motion to dismiss at oral argument. R. Doc. 262.

denied all pending motions as moot. In the proposed Restated and Superseding Complaint, the Court ordered Plaintiffs to provide more details with respect to each individual plaintiff.[26]

Defendants opposed Plaintiffs' motion for leave to file a Restated and Superseding Complaint, arguing the Plaintiffs' proposed complaint failed to comply with the Court's orders requiring specificity. The Court, upon report and recommendation from Judge Knowles, granted Plaintiffs' motion to file a Restated and Superseding Complaint, but ordered Plaintiffs to provide even more detail with respect to each Plaintiff's claims.[27] Plaintiffs then filed a "Supplemental and Amending Restated and Superseding Complaint" in response to the Court's order.[28]

Defendants filed the above-referenced motions to dismiss Plaintiffs' Supplemental and Amending Restated and Superseding Complaint. The Court heard oral argument on McDermott's Motion to Dismiss for Failure to State a Claim and ITCO's Motions to Dismiss for Failure to State a Claim.[29] Because Plaintiffs' Supplemental and Amending Restated and Superseding Complaint heavily referenced earlier complaints, at oral argument the Court

---

[26] *See* R. Doc. 262. The Court ordered Plaintiffs to include in the complaint: the facility at which each worker was allegedly exposed to TENORM, the specific time period during which each work alleges that he or she was exposed to TENORM, the specific nature of each worker's complained-of injury, the date each worker discovered his or her injury, each worker's date and alleged cause of death, if applicable, the identify of any specific contracts between each defendant and each worker, the survivor plaintiffs and their authority/qualifications to sue on behalf of any of the deceased workers, and each survivor's entitlement to punitive damages.

[27] R. Doc. 287. The Court ordered Plaintiffs to: provide the date and cause of death for each and every deceased, provide the qualification to sue for each nominal plaintiff, clarify for each plaintiff which defendant(s) he or she has claims against, clarify each individual's entitlement to punitive damages, and to plead fraud with particularity. *See* R. Doc. 284.

[28] R. Doc. 291.

[29] R. Doc. 379.

directed Plaintiffs to file a single, Restated Complaint by January 6, 2014 to comply with the Court's previous orders regarding the specificity of facts alleged. The Court ordered that the restated complaint shall not refer to any previously filed complaint and shall include a prayer by each plaintiff detailing the relief requested from each defendant.[30] The Court ordered the parties to file supplemental briefs stating whether they agreed or disagreed with the listing of claims in the table accompanying ITCO's motion to dismiss.[31] Plaintiffs' filed a motion for leave to file the restated complaint, and the Court ordered the defendants to file supplemental briefs addressing the extent to which Plaintiffs' proposed restated complaint affected their motions to dismiss.[32]

As an initial matter, the Court finds Plaintiffs' proposed Restated Complaint substantially complies with its earlier orders. Accordingly, **IT IS ORDERED** that Plaintiffs' motion for leave to file the restated complaint[33] be and hereby is **GRANTED**. The Court will now address the Defendants' motions to dismiss.

---

[30]R. Doc. 379.

[31]R. Doc. 380 (Tubo); R. Doc. 381 (Packard Pipe); R. Doc. 382 (Total); R. Doc. 383 (ConocoPhillips); R. Doc. 384 (Marathon Oil); R. Doc. 385 (Devon Energy Production Company, LP); R. Doc. 386 (Patterson); R. Doc. 387 (Weatherford); R. Doc. 388 (Chevron); R. Doc. 389 (BP Defendants); R. Doc. 390 (XH); R. Doc. 392 (Union); R. Doc. 393 (Shell Defendants); R. Doc. 396 (McDermott); R. Doc. 402 (Exxon); R. Doc. 407 (Plaintiffs).

[32]R. Doc. 410 (ConocoPhillips); R. Doc. 411 (Packard Pipe); R. Doc. 412 (ITCO); R. Doc. 413 (Chevron); R. Doc. 414 (Union); R. Doc. 514 (Shell Defendants); R. Doc. 416 (Hess); R. Doc. 417 (OFS); R. Doc. 418 (BP Defendants); R. Doc. 419 (Patterson); R. Doc. 420 (Tubo-FGS); R. Doc. 421 (XH); R. Doc. 422 (Weatherford); R. Doc. 423 (Total); R. Doc. 423 (McDermott); R. Doc. 426 (Marathon); R. Doc. 427 (Devon Energy). The Court also granted OFS leave to file a third supplemental memorandum in support of its motion to dismiss and/or summary judgment. R. Doc. 430.

[33]R. Doc. 394.

## MOTION TO DISMISS STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in *Gonzales v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 128 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A Claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

The Court cannot look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing Plaintiffs' complaint, the Court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the Plaintiffs. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief." *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d

967, 970 (5th Cir. 1986)).

## APPLICATION

Defendants' motions to dismiss raise substantially the same issues, therefore the Court finds it appropriate to address these issues globally. The Court will first discuss those arguments raised by Defendants rendered moot by Plaintiffs' Restated Complaint. The Court will then address Defendants' remaining arguments and determine whether any claims should be dismissed. Lastly, the Court will address specific issues raised by certain Defendants' motions.

### I. Mooted Arguments

The Defendants' motions seek to dismiss Plaintiffs' claims for: breach of contract or warranty; absolute liability under Louisiana Civil Code article 667, and fraud or conspiracy. Because Plaintiffs' Restated Complaint no longer alleges causes of action under these theories, **IT IS ORDERED** that Defendants' motions to dismiss, to the extent they seek dismissal of Plaintiffs claims for breach of contract or warranty, absolute liability under Civil Code article 667, and fraud or conspiracy, be and hereby are **DENIED AS MOOT.**[34]

The Defendants' motions also seek dismissal of claims by Plaintiffs who do not specifically bring claims against certain Defendants. In earlier versions of Plaintiffs' complaint, Plaintiffs included a general prayer for relief asserted by all Plaintiffs against all Defendants. Each Defendant's motion seeks to dismiss claims by those individual plaintiffs who do not make any specific allegations against a particular Defendant. In Plaintiffs'

---

[34]The Court notes that in the "General Facts" section of Plaintiffs' restated complaint, Plaintiffs make generalized statements about fraud and conspiracy, absolute liability, and breach of contract. *See* R. Doc. 394-1, p. 25. The Court does not consider these statements sufficient to assert causes of action or theories of liability, but rather only general iterations of Plaintiffs' version of the facts of the case drawn from earlier versions of the complaint.

Restated Complaint, however, each Plaintiff specifies and prays for relief against specific Defendants, as ordered by the Court. Accordingly, to the extent Defendants' motions seek dismissal of claims by plaintiffs solely because the complaint does not assert specific causes of action against specific Defendants, **IT IS ORDERED** that Defendants' motions to dismiss be and hereby are **DENIED AS MOOT.** The Plaintiffs have no claims pending against any Defendants unless those claims are specifically pleaded in the Restated Complaint.

## II. Global Issues

Plaintiffs' restated complaint asserts four theories of recovery against Defendants: negligence, strict liability, intentional tort, and a claim for punitive damages. Defendants' motions also seek dismissal of these claims. Therefore the Court will discuss the issues raised by Defendants' motions with respect to these causes of action.

### A. Workers' Compensation

Defendants' motions seek dismissal of Plaintiffs' claims to the extent they are barred by the Louisiana Workers' Compensation Act ("LWCA"). As a general matter, the LWCA provides the exclusive remedy to an employee for injury, sickness, or disease arising during the course and scope of employment. *See* La. Rev. Stat. § 23:1032(A). However, the LWCA has undergone several changes during the time period of Plaintiffs' alleged exposure to TENORM.[35]

---

[35]The LWCA applies as the exclusive remedy for both wrongful death and survival actions filed by the survivors of an injured worker. *See Deshotel v. Guichard Operating Co., Inc.*, 961 So.2d 697, 701 (La. App. 3d Cir. 2003). With respect to wrongful death claims, the Louisiana Supreme Court has held that version of the LWCA in effect at the time of death is applicable. *See Walls v. Am Optical Corp.* 740 So.2d 1262, 1265-75 (La. 1999). With respect to Plaintiffs' survival action claims, the applicable law is that in place at the time of exposure as determined under the "significant tortious exposure theory." *Austin v. Abney Mills, Inc.*, 824 So.2d 1137, 1143 (La. 2002). The same is true for those claims for exposure made by Plaintiffs who are still alive.

For purposes of the present motions, there are several significant changes in the LWCA worth noting. Prior to 1975, the LWCA used a "schedule approach" for occupational diseases and the act listed specific conditions covered under workers' compensation. *See O'Regan v. Preferred Enterpr., Inc.*, 758 So.2d 124, 129 (La. 2000).[36] For those occupational diseases not listed in the pre-1975 version of La. Rev. Stat. § 23:10131.1, an employee could bring suit against his or her employer in tort. It was not until 1975, when the Louisiana Legislature abandoned the "schedule approach" in favor of comprehensive coverage for occupational diseases, that all tort suits for occupational diseases were prohibited. *Id.* (citing 1975 La. Acts No. 583). Certain Plaintiffs assert tort claims against their alleged employer in the Restated Complaint. Plaintiffs argue they may do so because their claims arose prior to 1975 and their complained-of diseases are not listed in the pre-

---

[36]The pre-1975 version of the Act covers provides in part: "A. An occupational disease shall include *only those diseases hereinafter listed* when contracted by an employee in the course of his employment as a result of the nature of the work performed....
    (1) Poisoning by or disease resulting from contact with:
        (a) the halogens, halogen compounds, and halogenated hydrocarbons;
        (b) alkaline materials;
        (c) arsenic, phosphorus, silenium, sulfur, tellurium, and their compounds;
        (d) oxygen, nitrogen, carbon, and their compounds;
        (e) cyanides and cyanogen compounds;
        (f) lead and lead compounds;
        (g) metals other than lead and their compound;
        (h) aliphatic hydrocarbons and their nitro, amino, and other compounds;
        (j) alcohols;
        (k) organic and inorganic acids and their derivatives and compounds;
        (l) esters of aliphatic, aromatic, and inorganic acids;
        (m) aldehydes;
        (n) ketones;
        (o) ethers, glycol ethers, and their compounds;
        (p) phenol and phenolic compounds.
    (2) Diseased condition caused by exposure to X-rays or radioactive substances;
    (3) asbestosis;
    (4) silicosis;
    (5) dermatosis;
    (6) pneumoconiosis;
    (7) tuberculosis when contracted during the course fo employment by an employee of a hospital or unit thereof specializing in the case and treatment of tuberculiosis patients."
*Callaway v. Anco Insulation, Inc.*, 714 So.2d 730, 731 (La. App. 4 Cir. 1998).

1975 version of the act. However, even for those claims arising prior to 1975, the pre-1975

version covered "exposure to X-rays or radioactive substances." *Callaway,* 714 So.2d at 731.

Plaintiffs' restated complaint explicitly alleges exposure to radioactive substances. Thus,

regardless of whether a Plaintiffs' claim arose before or after 1975, Plaintiffs' injuries arising

from exposure to TENORM are covered under both the pre-1975 and the post-1975 versions

of the LWCA, and Plaintiffs may not assert a tort claim outside of the LWCA against their

employers.

Accordingly, to the extent Defendants move to dismiss Plaintiffs' tort claims against

their employers, **IT IS ORDERED** that Defendants motions be and hereby are

**GRANTED**. The following claims are dismissed:

- Strict liability and negligence claims asserted by Alexie Plaintiff (Lorette Lee Alexie) against McDermott;

- Claims for punitive damages asserted by Bradley Plaintiffs (Dorothy W. Bradley, Melvin J. Bradley, Wyatt B. Bradley, Earl C. Bradley, Jr., Glenn R. Bradley, Alfreada Bradley, Earlie M. Bradley, Tammy B. Bradley, April A. Bradley, and Mallere Bradley) against Patterson.[37]

- Strict liability and negligence claims asserted by Davis Plaintiffs (Benny Davis, Rubin Davis, Jr., Edward Davis, Geraldine Joseph, and Patricia McCray) against ITCO.

- Strict liability and negligence claims asserted by Gregory Plaintiff (Vianna Gregory Percle) against Patterson.

---

[37]The exclusivity provision of LWCA, prior to its amendment in 1995, precludes an employee from seeking punitive damages from his employer under former Civil Code article 2315.3 as a result of employment related injury or compensable disease. *Adams v. J.E. Merit Const., Inc.* 712 So.2d 88 (La. 1998).

- Strict liability and negligence claims asserted by the Gregory Plaintiff (Vianna Gregory Percle) against McDermott.

- Strict liability and negligence claims asserted by the Griffin Plaintiff (Howard Ray Griffin) against McDermott.

- Strict liability and negligence claims asserted by Glen Kirby against Tubo-FGS.[38]

- Strict liability and negligence claims asserted by James Kirby Plaintiffs (Glen R. Kirby, Carol Kirby Heiser and Gary Kirby) against Tubo-FGS.[39]

- Claim for punitive damages asserted by Timothy Kufel against Patterson.[40]

- Strict liability and negligence claims asserted by Melvin Landry against McDermott.

- Strict liability and negligence claims asserted by Melvin Landry against Tubo-FGS.[41]

- Strict liability and negligence claims, as well as claim for punitive damages asserted by Leaumont Plaintiff (William Leaumont, Sr.) against Marathon.

- Strict liability and negligence claims asserted by Quebedeaux Plaintiffs (Dolores Quebedeaux, Donovan Quebedeaux, Brent Quebeeaux, and Gregory Quebedeaux) against McDermott.

- Negligence claim asserted by Leslie Rushing against Anadarko OGC.

- Claim for punitive damages asserted by Smith Plaintiffs (Charlene Smith, Annie

---

[38]Glenn Kirby alleges he was employed by Tuboscope, and that Tubo-FGS is the successor to Tuboscope.

[39]The James Kirby Plaintiffs allege James Kirby was employed by Tuboscope, and that Tubo-FGS is the successor to Tuboscope.

[40]The exclusivity provision of LWCA, prior to its amendment in 1995, precludes an employee from seeking punitive damages from his employer under former Civil Code article 2315.3 as a result of employment related injury or compensable disease. *Adams v. J.E. Merit Const., Inc.* 712 So.2d 88 (La. 1998).

[41]Melvin Landry alleges was employed by Tuboscope, and that Tubo-FGS is the successor to Tuboscope.

Smith, Ashanti Smith, and Dexter Smith) against Texaco.

•        Strict liability and negligence claims asserted by Milton Vincent against McDermott.

In 1976, the Louisiana Legislature codified an exception to the exclusivity provisions of the LWCA when the employee's injury or disease is caused by an intentional tort. *See* La. Rev. Stat. § 1032(A); *Zimko v. Am. Cyanamid*, 905 So.2d 465, 475 (La. App. 4 Cir. 2005). Thus, Plaintiffs' intentional tort claims arising after 1976 are not precluded by the LWCA and may proceed against their employer.

Accordingly, to the extent Defendants move to dismiss Plaintiffs' intentional tort claims against their alleged employers arising after 1976, **IT IS ORDERED** that Defendants' motions be and hereby are **DENIED**.

### B. Sufficiency of Facts Pleaded for Intentional Tort Claims

Many of Defendants' motions argue the facts alleged in Plaintiffs' intentional tort claims are insufficiently pleaded. However, this Court already determined that certain Plaintiffs' intentional tort claims are adequately pleaded.[42] Because the intentional tort claims in Plaintiffs' Restated Complaint are no different from those set forth in earlier complaints, the Court finds no reason to alter its previous findings.

Accordingly, to the extent Defendants move to dismiss Plaintiffs' intentional tort claims as being insufficiently pleaded, **IT IS ORDERED** that Defendants' motions be and hereby are **DENIED**.

### C. Strict Liability

Defendants seek to dismiss Plaintiffs' strict liability claims. Prior to April 16, 1996, a plaintiff could impose strict liability on a custodian of a thing under former Louisiana

---

[42]R. Doc. 116, p. 8.

Civil Code article 2317 by establishing that (1) the person was injured by a thing that was in the defendant's care, custody, or control (*garde*); (2) the thing had a vice, ruin, or defect that presented an unreasonable risk of harm; and (3) the vice, ruin, or defect was the cause-in-fact of plaintiff's damages. *Lasyone v. Kan. City S. R.R.*, 786 So.2d 682, 689 (La. 2001).

In 1996, Louisiana Civil Code article 2317.1 was added to require knowledge or constructive knowledge of an unreasonable risk of harm in order to impose liability on a custodian of a thing. Thus, after April 16, 1996, a plaintiff alleging strict liability must prove: "(1) that the defendant knew or should have known of the vice or defect; (2) that the damage could have been prevented by the exercise of reasonable care; and (3) that the defendant failed to exercise such reasonable care." *Gailey v. Barnett* 106 So.3d 625, 628 (La. App. 4 Cir. 2012).

Under either the pre-1996 or post-1996 causes of action for strict liability, a defendant is only liable for things in its custody that have a "ruin, vice, or defect." La. Civ. Code art. 2317.1. Defendants argue that courts have imposed strict liability on a defendant only when a thing has "a flaw or condition of relative permanence inherent in the thing as one of its qualities." *Murray v. Aran Energy Corp.*, 863 F. Supp. 315, 319 (E.D. La. 1994). Defendants contend they cannot be held strictly liable because the radioactive contamination of the used oilfield pipes is merely a temporary condition and thus not recognized as a "defect."

The Court disagrees. The cases relied on by Defendants to argue that the condition of the pipes did not contain an inherent "defect" are distinguishable. *See Bridgfield Cas. Ins. Co. v. J.E.S., Inc.*, 29 So.3d 570, 573 (La. App. 1 Cir. 2009)(finding strict liability inapplicable where plaintiff tripped on a clump of sheetrock mud); *Dickerson v. Winn-*

14

*Dixie, Inc.*, 816 So.2d 315, 317 (La. App. 1 Cir. 2002) (finding strict liability inapplicable where plaintiff slipped on potting soil); *Holden v. Louisiana State Univ. Medical Center-Shreveport*, 690 So.2d 958, 961 (La. App. 2d Cir. 1997) (finding strict liability inapplicable where plaintiff slipped on juice on the floor). The radiation at issue in this case is absorbed into the pipe, which Plaintiffs' assert renders the pipe permanently defective.[43] Thus, the radioactive quality of the pipes containing TENORM is not a mere temporary hazard that would preclude the applicability of strict liability.

Accordingly, **IT IS ORDERED** that Defendants' motions to dismiss be and hereby are **DENIED** to the extent Defendants' seek to dismiss Plaintiffs' strict liability claims based on lack of a "defect."

### D. Punitive Damages

#### (i) Operative Time Period

Defendants move to dismiss the punitive damage claims of certain Plaintiffs. Plaintiffs bring their punitive damage claims under former article 2315.3 of the Louisiana Civil Code, which provided that, "[i]n addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." *See Corbello v. La. Prod.*, 850 So.2d 686, 707 (La. 2003). The provision was in effect between 1984 and 1996, and applies to causes of action arising during that time period. *See id.* at 707 n.9; *Brownell Land. Co. v. Apache Corp.*, 2005 WL 3543772, at *6 (E.D. La. Oct. 13, 2005). Thus, "in order to state a cause of action for exemplary damages, the plaintiff must plead facts which establish the[] cause of

---

[43]R. Doc. 338, p. 9.

action during the effective period of article 2315.3." *In re Harvey Term Litig.*, 872 So.2d 584, 586 (La. Ct. App. 1994). To the extent any Plaintiff requests punitive damages for claims arising outside of the 1984 to 1996 window, that relief is unavailable.

Plaintiffs' Restated Complaint does not assert any claims for punitive damages arising exclusively outside of the operative period of former Civil Code article 2315.3. Accordingly, to the extent the Defendants' motions to dismiss seek to dismiss claims for punitive damages arising outside of the 1984-1995 window, **IT IS ORDERED** that Defendants' motions be and hereby are **DENIED AS MOOT**.

### (ii) Punitive Damages in Wrongful Death Claims

Louisiana state courts have declined to allow a plaintiff to recover punitive damages in wrongful death actions. *See Bulot v. Intracoastal Tubular Serv., Inc.*, 888 So.2d 107, 1022-23 (La. App. 4 Cir. 2004); *Bailey ex rel. Brown v. Exxon Mobil Corp.* 76 So.3d 53 (La. App. 4 Cir. 2011); *Pierce v. Exxon Mobil Corp.*, 2013 WL 1856079, at *10 (E.D. La. Apr. 2013). Accordingly, **IT IS ORDERED** that Defendants' motions be and hereby are **GRANTED** to the extent any Plaintiff seeks punitive damages in a wrongful death claim.

The following claims are dismissed:

• Wrongful death claim for punitive damages against Chevron and Marathon by the Alexie Plaintiff (Loretta Lee Alexie);

• Wrongful death claims for punitive damages against Chevron and Exxon by the Austin Plaintiffs (Tara Austin Lopez, Robert Austin, and Ashley Austin);

• Wrongful death claims for punitive damages against Patterson, OFS, Weatherford, Chevron, Texaco, Union, Amoco, Exxon, and Marathon by the Bradley Plaintiffs (Dorothy W. Bradley, Melvin J. Bradley, Wyatt B. Bradley, Earl C. Bradley, Jr.,

Glenn R. Bradley, Alfreada Bradley, Earlie M. Bradley, Tammy B. Bradley, April A. Bradley, and Mallere Bradley);

- Wrongful death claims for punitive damages against Amoco, Chevron, Conoco, Exxon, Gulf Oil, Marathon, Devon, Shell, Texaco, and Hess by the Buras Plaintiffs (Jeanette Buras; Dominic Buras, Jr., Chad Buras, Daisy Buras, Matthew Buras, Nicole Buras Bort, Paul Buras, and Randy Buras);

- Wrongful death claims for punitive damages against Exxon, MEPNA, Amoco, Chevron, and Texaco by the Jackson Plaintiffs (Sandra Jackson, Wanda Jackson, Joe Jackson, Andrew Jackson, Jr. and Kasi Jackson);

- Wrongful death claim for punitive damages against Tuboscope, Chevron, Marathon, and Exxon by the Leaumont Plaintiff (William Leaumont, Sr.);

- Wrongful death claims for punitive damages against Chevron and Exxon by the Miller Plaintiffs (Mary U. Miller, Pierre Miller, Jr., and Amanda L. Miller);

- Wrongful death claims for punitive damages against Total, Devon and Union by the Muckleroy Plaintiffs (Imogene Muckleroy, Steven Muckleroy, Scott Muckleroy, and Silvia Gray);

- Wrongful death claims for punitive damages against ConocoPhillips, Exxon, Texaco, Shell Oil, and Chevron by the Pontiff Plaintiffs (Celeste Pontiff and Mickey Howard);

- Wrongful death claims for punitive damages against Arco, Hess, Amoco, Texaco, Chevron, Exxon, and Anadarko US by the Quebedeaux Plaintiffs (Dolores Quebedeaux, Donovan Quebedeaux, Brent Quebedeaux, and Gregory Quebedeaux);

- Wrongful death claims for punitive damages against Texaco, Chevron, and Exxon by the Smith Plaintiffs (Charlene Smith, Annie Smith, Ashanti Smith, and Dexter

Smith);

- Wrongful death claims for punitive damages against Chevron and ConocoPhillips by the John Smith Plaintiffs (Terrell Smith, John Smith, Jr., Gary Smith, Gregory Smith, and Rhoda McHenry);

- Wrongful death claims for punitive damages against Shell Oil and Exxon by the Soape Plaintiffs (Barbara Soape, Kenneth Russell Soap, Jr., April Starr Soape, and Chursha Moon Soape);

- Wrongful death claims for punitive damages against Shell Oil, Shell Offshore, Chevron, and Exxon by the Thomas Plaintiffs (Odelia Thomas, Louis Thomas, Jr., and TeShilonne Thomas);

- Wrongful death claims for punitive damages against OFS, Arco, BP, Chevron, Exxon, Mobil, Shell Offshore, Shell Oil, SWEPI, and Union by the Coleman Plaintiffs (Barbara Coleman, Beverly N. Marshall, Deborah Coleman Divinity, Greta A. Richardson, Jermaine Coleman, Levi Coleman, Jr., Romunda Coleman, Stanley Newton, Shirley Coleman Moreland and Troy Selman).

### E. Timeliness of Survival Claims

As this Court has previously held, "[i]n survival actions involving latent, long-term toxic torts, federal courts are to apply the law in effect at the time of the decedent's significant causative exposure." *Frank v. Shell Oil co.*, 2012 WL 1230736, at *4 (E.D. La. Apr. 12, 2012)(citing to a number of Louisiana state court cases). It is clear that under Louisiana law, survival actions based on significant causative exposure that occurred entirely before 1986 are subject to a one year peremptive period that cannot be interrupted or suspended. *Ayo v. Johns-Manville Sales Corp.*, 771 F.2d 902, 907 (5th Cir. 1985);

*Kennedy v. Trinidad Corp.*, 349 F.2d 832 (5th Cir. 1965).

For survival claims based on causative exposure after 1986, the law is less clear. However, the Court held in its October 2, 2012 Order and Reasons that Civil Code article 2315.1 contains a one-year peremptive period even after the 1986 amendment.[44] *See, e.g. Barber v. Employers Ins. Co. of Wausau*, 97 So.3d 454 (La. App. 1 Cir. 2012). After dismissing certain Plaintiffs' survival claims as untimely based on a one year peremptive period, the Court designated the October 2, 2012 Order and Reasons as a partial final judgment under Federal Rule of Civil Procedure 54(b).[45] Plaintiffs appealed the October 2, 2012 Order and Reasons on February 4, 2013.[46] The Fifth Circuit Court of Appeals thereafter issued a certified question to the Louisiana Supreme Court to determine whether, after the 1986 amendment to the statute, the one-year limitations period for a survival action under Civil Code article 2315.1 is prescriptive or peremptive.[47]

The issue of whether the limitations period for survival claims based on causative exposure after 1986 is still on appeal. The Court denies ruling on the motions to dismiss survival claims based on untimeliness without prejudice to the Defendants' ability to reurge the motions after the appeal is decided. Accordingly, to the extent Defendants' motions seek to dismiss Plaintiffs' survival claims as untimely, **IT IS ORDERED** that Defendants' motions be and hereby are **DENIED WITHOUT PREJUDICE.**

## III. Specific Defendants' Arguments

---

[44] *See* R. Doc. 116, pp. 4-6

[45] R. Doc. 116.

[46] R. Doc. 166.

[47] *See* USCA 13-30150, R. Doc. 8.

## A. Choice of Law

Tubo-FGS's motion seeks to dismiss all of the Austin Plaintiffs' wrongful death claims based on the application of Texas' two year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code. Ann. § 16.003. Plaintiffs' Restated Complaint alleges Ricky Austin worked in both Louisiana and Texas.[48] Liberally construing Plaintiffs' complaint and reading all allegations as true, the Court declines to dismiss the Austin Plaintiffs' wrongful death claims based on the applicability of Texas law. Tubo-FGS has not shown Texas law unequivocally applies such that Plaintiffs' complaint shows "a bar to relief" on its face. *Clark*, 794 F.2d at 970. Accordingly, to the extent Tubo-FGS seeks to dismiss Plaintiffs' complaint based on the application of Texas law, **IT IS ORDERED** that Tubo-FGS's motion be and hereby is **DENIED.**

## B. OFS's Motion to Dismiss/Motion for Summary Judgment

OFS attached an affidavit to its supplemental memorandum[49] in support of its Motion to Dismiss/Motion for Summary Judgment. Because OFS attached to its motion matters outside the pleadings, the Court will treat it as a summary judgment motion. *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 745 (5th Cir. 1986). Summary judgment is appropriate when "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which

---

[48]R. Doc. 349-1, p. 58.

[49]R. Doc. 430.

would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's Inc.* 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence on its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

OFS argues it cannot be held liable for the claims against it asserted by the Bradley Plaintiffs, who allege exposure to TENORM from 1988 to 1992. OFS submitted competent summary judgment evidence, an affidavit, attesting to the fact that OFS did not clean any used pipe after 1987. Because OFS carried its burden, the burden shifts to the Plaintiffs to come forward with evidence to create a genuine fact issue. The Bradley Plaintiffs failed to come forward with any evidence, and as a result, the Bradley Plaintiffs' claims against OFS are dismissed.

OFS also presents the affidavit attached to its supplemental memorandum to argue it cannot be held liable for the Coleman Plaintiffs' claims. The Coleman Plaintiffs' claims arise from Levy Coleman Sr.'s alleged exposure to TENORM at OFS's facility and at Bredero Price Company's facility where he was employed. OFS attests that it did not clean any pipe at the Bredero Price Company's facility, and the Bredero Price Company or its employees never performed any work at OFS's facilities. Because OFS carried its burden of showing it is not liable for the Coleman Plaintiffs' claims and Plaintiffs have also failed to rebut this fact, the Coleman Plaintiffs' claims against OFS are dismissed.

OFS, as the movant, has the burden to show Plaintiffs' claims should be dismissed. OFS has failed to put forth any summary judgment evidence showing the remaining claims against it, asserted by Joseph A. Walker and the Kirby Plaintiffs, should be dismissed.

Accordingly, OFS's motion is **DENIED** to the extent OFS asks the Court to dismiss the claims against it by the Kirby Plaintiffs and Joseph A. Walker. OFS is free to re-urge its arguments with respect to those plaintiffs at a later date by presenting competent summary judgment evidence.

**New Orleans, Louisiana, this  2nd  day of September, 2014.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**